(June 12, 1909.)

## In the Matter of the Application of H. F. MALLON, for a Writ of Habeas Corpus.

[102 Pac. 374.]

CONSTITUTION—DUE PROCESS OF LAW—TWICE IN JEOPARDY—EQUAL PROTECTION OF THE LAW—ARBITRARY PUNISHMENT.

1. Sec. 6452, Rev. Codes, as follows, "Every state prisoner confined in the state prison for a term less than for life, who escapes therefrom, is punishable by imprisonment in the state prison for a term equal in length to the term he was serving at the time of such escape; said second term of imprisonment to commence from the time he would otherwise have been discharged from said prison," does not deny due process of law to persons charged with a violation thereof.

2. Said section does not provide for placing in jeopardy the second time the persons charged thereunder.

3. Every person is entitled to equal protection of the law, and equal protection of the law means that equal protection and security shall be given to all under like circumstances in his life, his

liberty and his property and in the pursuit of happiness, and in the exemption from any greater burdens and charges than are equally imposed upon all others under like circumstances.

4. While the legislature in prescribing and fixing punishment for crime has very great latitude in classifying the same, still such classification should be natural and not arbitrary, and should be made with reference to the heinousness or gravity of the act or acts made the crime, and not with reference to matters disconnected with the crime.

5. Sec. 6452, Rev. Codes, in fixing the punishment of a person who escapes from the state prison at the same term for which he is serving at the time of the escape, denies equal protection of the law to persons under like circumstances, and in providing that the escape of a state prisoner is made a crime and exempting federal prisoners and others who may be confined in the penitentiary for temporary purposes, is special and discriminatory legislation, and violates the fourteenth amendment of the constitution of the United States and the constitution of Idaho.

(Syllabus by the court.)

Original application in this court for writ of *habeas corpus.* Demurrer to the petition. Demurrer *overruled.* Petitioner ordered *discharged.*

K. I. Perky, for Petitioner.

With reference to the punishment prescribed for the offense defined by the statute it is at once apparent that it is neither equal nor uniform, nor is it based upon the character or circumstances of the act sought to be characterized as a public offense. (*Ex parte Irwin,* 88 Cal. 169, 25 Pac. 1118; *State v. Lewin,* 53 Kan. 679, 37 Pac. 168.) In this connection we call attention to sec. 13, art. 1, constitution of Idaho, and we also rely on the provisions of the fourteenth amendment to the federal constitution. (Prin. of Const. Law, Cooley, 240, 249; *Budd v. State* (Tenn.), 3 Humph. 483, 39 Am. Dec. 189, 193; 8 Cyc. 1059; *Barbier v. Connally,* 113 U. S. 27, 5 Sup. Ct. 357, 27 L. ed. 924; *Yick Wo v. Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. ed. 220, 226, 227; *Northern Pac. Ry. Co. v. Carland,* 5 Mont. 146, 3 Pac. 134.) To whatever class a law may apply it must act equally upon each member thereof— that is to say, it must operate on all alike who are in a like situation. The classification underlying such legislation must

be a reasonable one. If arbitrary and unreasonable, the courts do not hesitate to declare the legislation void. (*Sutton v. State,* 96 Tenn. 696, 36 S. W. 697, 33 L. R. A. 589; *Murray v. Board of Commrs.,* 81 Minn. 359, 83 Am. St. 379, 84 N. W. 103, 51 L. R. A. 828; *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540, 22 Sup. Ct. 431, 46 L. ed. 679; *Wagner v. Milwaukee Co.,* 112 Wis. 601, 88 N. W. 577; *Missouri Pac. Ry. Co. v. Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. ed. 107; *Nichols v. Walter,* 37 Minn. 264, 33 N. W. 800; *Johnson v. St. Paul & D. R. Co.,* 43 Minn. 222, 45 N. W. 157, 8 L. A. A. 419; *State ex rel. Richards v. Hammer,* 42 N. J. L. 439; *Sutton v. State,* 96 Tenn. 696, 36 S. W. 697, 33 L. R. A. 589; *Ex parte Jentzsch,* 112 Cal. 468, 44 Pac. 803, 32 L. R. A. 664; *Magoun v. Illinois Tr. & Sav. Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. ed. 1037; *Gulf etc. R. Co. v. Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. ed. 666.)

Sec. 3490, Rev. Codes, cited by respondent, has no application to this question, since the right of the warden of the state prison to receive and subject federal prisoners to the same penitentiary discipline as state prisoners is unquestioned, and the same is equally true of sec. 5539, 6th Federal Statutes Ann., also cited by respondent. The question of prison discipline is in no way involved. We call the court's attention to secs. 6331 and 7480, Rev. Stat.

D. C. McDougall, Attorney General, and J. H. Peterson, for Respondent.

"Due process of law," as adopted in the American constitution and as construed in the common law of the several states, means that a party shall have his day in court, an opportunity to be heard, and a trial of the right claimed by the plaintiff, and controverted by the defendant, with the right of each party to introduce evidence to establish his right on the part of one or his defense on the part of the other, followed by a judgment of the court upon the merits of the controversy. (*Zeigler v. South & N. Ala. R.,* 58 Ala. 594; *Bielenberg v. Montana Union R. Co.,* 8 Mont. 271, 20 Pac. 314, 2 L. R. A. 813; *Catril v. Union Pac. R. Co.,* 2 Ida. 576,

21 Pac. 416, 5 L. R. A. 359, note, 11 L. R. A. 224, note, 13 L. R. A. 305, note.)

Whenever the law operates alike upon all persons similarly situated, equal protection cannot be said to have been denied. (8 Cyc. 1075.)    The provisions of this statute are wise and in the interest of good government.    (*Hays v. Stewart,* 7 Ida. 193, 61 Pac. 591.)    The mere fact that the law is harsh in no sense affects the constitutionality, as the legislature is the sole judge of the expediency of enacting laws.    (*Wright v. Kelley,* 4 Ida. 634, 43 Pac. 565; 1 Sutherland's Stat. Const., p. 136.)    The contention that the defendant is twice in jeopardy deserves no particular discussion.    (*Hays v. Stewart, supra.*)    A close reading of the statute in question will, we think, lead the court to the conclusion that the legislature in prescribing punishment for escapes intended that the *maximum* sentence should not exceed the term which the convict was serving at the time of his escape.    "Where a statute contains such ambiguity as to leave reasonable doubt of its meaning, or it admits of two constructions, that which operates in favor of life or liberty is to be preferred."    (2 Sutherland on Stat. Const., pp. 962, 966, 972; 44 Century Digest, cols. 308, 309.)    "Considerations of public policy are always pertinent in the interpretation of a statute."    (Bishop on Stat. Crimes, sec. 82.)

The sentence imposed for the crime of escape does not begin to run until the first sentence has been served; therefore, there can be no conflict between the sentence imposed by the federal court and the sentence imposed by the state courts for a crime committed within the penitentiary.    Under the reading of both the federal and state statutes, and the decision of our court (*Hays v. Stewart, supra*), there seems to be no room for the contention that state prisoners are discriminated against in favor of the federal prisoners.

STEWART, J.—This is an original application for a writ of *habeas corpus,* and involves the constitutionality of sec. 6452, Rev. Codes.    This section reads as follows: "Every state prisoner confined in the state prison for a term less than for life, who escapes therefrom, is punishable by imprison-

ment in the state prison for a term equal in length to the term he was serving at the time of such escape; said second term of imprisonment to commence from the time he would otherwise have been discharged from said prison."

Counsel for petitioner contends, first, "that said section, both in its general operation and its application to your petitioner in particular, deprives persons charged thereunder, and your petitioner in particular, of their liberty without due process of law; second, that said section denies to persons charged thereunder equal protection of the laws; third, that said section is unreasonable and constitutes class legislation; fourth, that said section places persons charged thereunder in jeopardy a second time for the same offense." The facts in this case are as follows:

The petitioner began the service of a two year sentence under a judgment of the district court of Shoshone county, on April 30, 1907, for the crime of burglary; and on July 9th of that year, while serving such sentence, made his escape from the state prison. He was recaptured and tried for such escape under the provisions of the section above quoted, and on September 14, 1907, was found guilty and a judgment rendered against him, in which judgment he was sentenced to undergo confinement at hard labor in such state prison for a term of two years from and after the expiration of the sentence which he was serving at the time of his escape. At the time the petition was filed in this case the judgment committing the petitioner to said prison for burglary had been fully executed, and the petitioner was serving the sentence imposed under the judgment for escape from the state prison.

We do not think that the first objection made to the statute is well taken or that any extended discussion is necessary in order to show that said section is not unconstitutional because it denies to the person named therein due process of law. This section makes certain acts a crime but in no way takes away from the persons charged with such crime any of the rights conferred generally upon a person charged and tried with any other crime. The same court is given jurisdiction to try the person charged with a violation of this section as is given jurisdiction to try violations of every other

provision of law, of the same grade. The person charged with a violation of said section is required to be apprehended, is given the same notice, and the procedure upon trial is the same as required and provided for the trial of every other criminal charge. The defendant is given an opportunity to be heard, given the same means of producing his evidence, the same opportunity to employ counsel as is given to every other person charged with a crime under any other law of the state.

In the case of *Eagleson v. Rubin, ante,* p. 92, 100 Pac. 765, this court defined due process of law as follows:

" 'Due process of law,' as used in sec. 13, art 1, of the constitution of this state, and also in the constitution of the United States, when applied to judicial proceedings, means that every litigant shall have the right to have his cause tried and determined under the rules of procedure, the same as are applied to similar cases, and when this is afforded to him, a defendant cannot complain that 'due process of law' is not being observed."

This statute provides full opportunity to every person charged with a violation thereof, to have the charge prosecuted, tried and determined in the court having jurisdiction of the same, under the same forms of law as are provided for the trial of all other crimes under the constitution and laws of the state, and provides due process of law. (8 Cyc. 1080 et seq.)

We will next refer to the last ground assigned by the petitioner against the constitutionality of the statute, and that is, that it places persons charged thereunder in jeopardy a second time for the same offense. In argument, counsel for petitioner admitted that this objection was not well taken, and this clearly appears to be so, for the offense, upon which the prosecution is based, is that of escape from the state prison. This is not the charge which had previously been made against the petitioner. Neither has the petitioner been once tried for this offense. It is clear that the statute refers to a distinct offense, that of escape from the state prison, and it is for that offense that the statute under consideration provides punishment in the state prison.

The second and third objections made to the statute will be considered together, and in our judgment present the real and important question involved in this case,—that is, does this statute deny equal protection to all persons charged with a violation thereof, and is it unreasonable or class legislation?

It will be observed that the punishment to be inflicted under this statute depends entirely upon the sentence the convict is serving at the time of the escape. If a convict is serving a one year sentence and escapes, upon conviction of such escape he must be sentenced to serve an additional year from the expiration of the first sentence.

If a convict is serving a twenty year sentence and escapes, upon conviction of such escape he must be sentenced to serve an additional twenty years from the expiration of the first sentence. A maximum and minimum penalty, within which the court is given the discretion to fix the punishment according to the gravity of the offense, is not permitted. The offense is not divided into grades, unless it can be said that the grade of the crime is fixed by the sentence from which the convict is escaping; and the attorney general adopts this contention and argues that the statute does graduate the punishment according to the offense for which the convict was serving at the time of the escape, and that this is a proper and reasonable classification.

We think it may be stated as a general proposition of law that every person is entitled to the equal protection of the law, and that equal protection of the law means that equal protection and security should be given to all under like circumstances in his life, his liberty and his property and in the pursuit of happiness, and in the exemption from any greater burden and charge than are equally imposed upon all others under like circumstances. (8 Cyc. 1058, 1059; *Barbier v. Connolly*, 113 U. S. 27, 5 Sup. Ct. 357, 27 L. ed. 924.) Under this statute there would be as many different grades of crime as there are prisoners undergoing different sentences. A convict undergoing a one year sentence may conspire with a convict undergoing a twenty year sentence in planning and executing an escape, and may be the one who conceived the

notion to escape, devised the plans and merely used the twenty
year convict in executing such plans; yet, notwithstanding
this fact, the latter, in case of conviction for escape, is re-
quired to serve an additional twenty year sentence after the
expiration of the term for which he is serving, while the for-
mer is required to only serve a one year additional sentence.
To say that the long term convict commits a greater offense
than the short term convict is to base the punishment for
such escape not upon the act of escaping from a state prison,
but upon the act of escaping from a punishment fixed by a
court in the judgment of conviction. The statute in defining
the offense, however, makes the escape from the state prison
the offense and not the escape from the punishment of the
judgment fixed by the court upon trial. This classification
is not natural, but arbitrary. To justify a classification of
grades of crime, there must appear some good and valid rea-
son why the classification should be made as made. As said
by the supreme court of the United States in *Connolly v.
Union Sewer Pipe Co.*, 184 U. S. 540, 22 Sup. Ct. 431, 46 L.
ed. 679:

"The difficulty is not met by saying that, generally speak-
ing, the state when enacting laws may, in its discretion, make
a classification of persons, firms, corporations, and associa-
tions, in order to subserve public objects. For this court has
held that classification 'must always rest upon some differ-
ence which bears a reasonable and just relation to the act in
respect to which the classification is proposed, and can never
be made arbitrarily and without any such basis. . . . . But
arbitrary selection can never be justified by calling it classifi-
cation. The equal protection demanded by the fourteenth
amendment forbids this. . . . . No duty rests more impera-
tively upon the courts than the enforcement of those constitu-
tional provisions intended to secure that equality of rights
which is the foundation of free government. . . . . It is ap-
parent that the mere fact of classification is not sufficient to
relieve a statute from the reach of the equality clause of the
fourteenth amendment, and that in all cases it must appear,
not only that a classification has been made, but also that it
is one based upon some reasonable ground,—some difference

which bears a just and proper relation to the attempted class-ification,—and is not a mere arbitrary selection.' "

See, also, Cooley on Const. Lim., pp. 556-575; *Wagner v. Milwaukee Co.*, 112 Wis. 601, 88 N. W. 577; *Nichols v. Walter*, 37 Minn. 264, 33 N. W. 800; *Sutton v. State*, 96 Tenn. 696, 36 S. W. 697, 33 L. R. A. 589; *Murray v. Board of Commrs.*, 81 Minn. 359, 83 Am. St. 379, 84 N. W. 103, 51 L. R. A. 828.

The very theory of punishment, to be imposed for viola-tions of the law, is, that such punishment should be propor-tioned to the gravity of the offense. For a statute to say that a convict confined in the state prison for a term of six months (as an illustration), who by force and violence breaks out of such state prison, upon conviction for such escape can only be confined for the term of six months, while a convict who peaceably escapes, without resorting to force or violence, shall be subject to a twenty year sentence because at the time of the escape he was serving such a sentence, is fixing an arbi-trary, unnatural and unjust punishment, and is contrary to the spirit and in violation of the constitution of the United States as well as the constitution of this state. While the legislature, in prescribing and fixing punishment for crime, has very great latitude in classifying the same, still the rule is well recognized, that in making such classification it should be natural and not arbitrary, and should be made with refer-ence to the heinousness or gravity of the act or acts made a crime, and not with reference to matters disconnected with the crime. In the case of *State v. Lewin*, 53 Kan. 679, 37 Pac. 168, the supreme court of Kansas had under considera-tion a statute reading as follows:

"That in case any convict shall escape from the peniten-tiary, . . . . the said convict shall be taken by the warden before the district court of Leavenworth county, on informa-tion filed by the warden; and if the charge be sustained, the time said convict had served in the penitentiary prior to such act as charged shall not be counted as any part of the term of his sentence, but the said convict shall be sentenced by the court to confinement in the state penitentiary for the full

term for which he or she was sentenced by the court before whom he or she was convicted and undergoing sentence at the time of the violating the provisions of this section: provided, that no limitation shall bar proceedings under this section.''

In the course of the opinion the court says:

''The punishment required to be imposed is not to be measured by the offense committed, but is made to depend wholly on the date of the sentence under which the prisoner was confined in the penitentiary at the time he committed the act for which he is punished. The court is required simply to obliterate the time that he has been confined in the penitentiary for his original offense, and, as a punishment for the escape or mutiny, to reimpose the sentence given by the court for his prior crime. So it may happen under this section that two men attempting or effecting an escape from the penitentiary on the same day, in concert, under precisely the same circumstances, and with exactly equal guilt, would receive wholly different punishment. If one had been confined but for a day, his punishment would be increased but by one day, while the other, who might have been confined for twenty years, would be sentenced to a further confinement for that number of years. . . . . Can this be said to be an impartial administration of justice? Can it be said to be affording to all individuals the equal protection of the laws? The inherent vice of such an enactment is not fully apparent. . . . . We are not disposed to strain our construction of constitutional safeguards to uphold such a statute. We think section 28 wholly void, and the order of the district court, quashing the information, is sustained.''

The statute under consideration in this case in its practical application is the same as the statute under consideration in the case at bar. Two convicts effecting an escape from the state prison on the same day in concert under precisely the same circumstances and exactly equal grade would receive wholly different punishment. If one had been confined for six months, his punishment would be increased but six months, while the other, who might have been confined for twenty years, would be sentenced for a further confinement for that

number of years; and so if different sentences had been im-
posed of different terms. The vice of this statute is that the
character or nature of the offense committed is not the basis
upon which the extent of the punishment is fixed.

The attorney general argues that a person confined in the
penitentiary for a long term of years may be presumed of a
more dangerous character than a person confined for a short
term of years, and therefore the escape from the long term
sentence is a greater crime than the escape from a short term
sentence. The conclusion thus drawn by the attorney gen-
eral we cannot approve. The mere fact that a person may be
serving a long term of years is not, in our opinion, evidence
that such person is a more dangerous person to society than
a person serving a short term of years. It is, however, evi-
dence that the person serving a long term of years has com-
mitted a more grave offense which deserves greater punish-
ment than the person serving a short term of years. When
the sentence has been finished the penalty has been paid. All
convicts having completed the sentence are supposed to have
discharged their full debt to society and the state, and upon
the discharge of such debt they are presumed to all be on
an equality in so far as being entitled to the protection of
the law. Under this statute, however, notwithstanding the
fact that a convict has paid the penalty in full, by having
completed his sentence, if he escapes from the state prison
where confined, his future punishment is regulated entirely
by the debt which has been fully paid and discharged.

The assertion that society will be in greater danger from
the person who has served a long term of years than from
the person who has served a short term,—in case of escape
from the penitentiary,—is not, in our judgment, based upon
reason or natural laws or conditions, and not a natural rea-
son why a greater punishment should be imposed upon the
person who escapes from the penitentiary while undergoing
a long-term sentence than is imposed upon a person under-
going a short term. But the punishment thus fixed for es-
cape is arbitrary, unreasonable, unnatural and in no way
based upon the nature, character, or gravity of the offense.

That no one shall be subject to any greater burdens or charges than such as are imposed upon all others under like circumstances, means that such protection shall be extended to every person and everywhere without reference to his position in society, or station in life; whether he lives in town or the country, or whatever color may be the house in which he lives, or whether humble or imposing in structure. To say that "under like circumstances" may be extended to mean (as applied to the facts of this case) all persons serving like sentences, would make the crime of escape have reference to matters not involved in the nature or character of the escape. "Under like circumstances," as applied to an escape, would seem to suggest a classification with reference to whether the escape was peaceable and without resistance, or by force or violence, or by false representation, threats, bribery, or promises of gain or some natural classification with reference to the crime; but a classification based upon the character of sentence being served is, in our judgment, arbitrary and unreasonable, and a clear violation of the provisions of the constitution of this state and the fourteenth amendment to the constitution of the United States, which guarantees to every person equal protection before the law.

Counsel for the petitioner also argue that this act discriminates in favor of federal prisoners confined in the state prison, and other persons who may be confined therein, although not in execution of a judgment of conviction. Sec. 8490, Rev. Codes, provides: "The warden shall receive, safely keep, and subject to the discipline of the penitentiary, any criminal convicted of any crime against the United States, and sentenced to confinement therein by any court of the United States sitting within this state, until such sentence is executed, or until such convict is discharged by due course of law; the United States supporting such convict and paying the expenses of executing such sentence."

This statute was no doubt enacted to carry into effect the provisions of an act of Congress of June 30, 1834 (4 Stat. 739), which declared, "That any criminal imprisoned in a state penitentiary should be subject to the same discipline

and treatment as the state convicts.'' In construing this statute, the circuit court for the northern district of Illinois, in *Ex parte Geary*, 10 Fed. Cas. No. 5293, held that when a person is sentenced by a court of the United States to a penitentiary of the state, he is subject to the same discipline and treatment, and laws of the state, as the prisoners of the state. While, therefore, a person committed to a state prison by a federal court is subject to the same discipline and treatment as state prisoners confined therein, yet the statute under consideration in this case exempts all federal prisoners from its operation. If a person confined in the state prison under a judgment of conviction in a federal court conceives the notion to escape, makes plans for executing the same, and calls to his assistance a person undergoing a sentence by a state court, and the escape of both is accomplished, the federal prisoner is exempt under this statute from any punishment for such escape, while the state prisoner is subjected to punishment; when in fact both did the same thing, performed the same acts, and transgressed the same necessary order of discipline. This, in our judgment, is special, discriminatory and class legislation.

It is argued by the attorney general that a critical examination of this statute will lead to the conclusion that the legislature, in prescribing the punishment for escape, intended to fix the maximum penalty to be inflicted at not to exceed the term which the convict was serving at the time of his escape, and to leave to the discretion of the trial court the punishment not exceeding the maximum. To reach this conclusion we will confess would require a most critical examination, and to a degree that has not enabled us to discover the meaning which the attorney general.thus attempts to give to the language used: When the statute says, ''Every state prisoner . . . . who escapes, is punishable,'' and the punishment is fixed, we are not advised of any process of reasoning by which we could discover the power of the trial court to impose any lesser punishment than fixed by the statute. To give this construction to this statute, it seems to us, would be to legislate upon the subject, and supply what we might

conceive to be necessary in order to sustain the constitutionality of the statute. If this be the rule which should guide courts in determining the constitutionality of a statute, the court would have little difficulty in sustaining all legislative acts, because they might supply all such defects or alterations by judicial legislation. We, however, must take this statute as it reads, and when so taken the punishment is fixed arbitrarily and is not in any sense left to the discretion of the trial court. If the legislature in its wisdom—and it no doubt would be wise—desires to provide a penalty for escapes or attempts to escape from the state prison, such legislation would be simple, and need not in any sense be complicated in order to accomplish the results desired. It could be made to apply to all persons who escape or attempt to escape from the state prison, and the punishment could be fixed with reference to the nature or character of the offense,—that is, if the effort was peaceable the gravity of the offense would be less than if forceable and by threats; and the extent of punishment might be committed to the trial court with a minimum and maximum fixed between which the court could exercise its discretion as is generally provided for public offenses, and the constitutional objections to such statute could not then be urged.

The attorney general also argues that to hold this act unconstitutional, and thereby release from the penitentiary those who have been convicted of violating the same, would be a very great wrong. This court, however, is called upon to administer the law as it is written, as near as we can understand it, and if the result be to release persons who are now confined in the penitentiary, it is not the concern of this court, for if the law is unconstitutional under which a conviction is had, then the party convicted should not be in the penitentiary and his imprisonment is illegal and wrongful. If the constitutional rights of an inmate of the penitentiary have been invaded, it is just as much the duty of the court, as we understand it, to give to this person his constitutional rights as to any other person, whatever his station or position in life may be. It is for the legislature to enact the law and it

is for the court to construe it; and if in construing an act the court finds that it denies a person his constitutional rights, we do not understand that the court should be controlled by the fact that it may result in extending liberty to persons who have been imprisoned (although illegally), although they be vicious or bad characters.   The duty of the court is plain and should not be evaded.

For the reasons heretofore given we hold that the act under consideration denies to the persons named therein equal protection of the laws, that it is special and class legislation, and violates the fourteenth amendment of the constitution of the United States and the constitution of this state.   The demurrer to the petition is *overruled*, and the petitioner is ordered *discharged* from the custody of the warden of the state prison.

Sullivan, C. J., and Ailshie, J., concur.