EL PUEBLO, APELANTE, *v.* RUIZ *alias* MORA, APELADO.

APELACIÓN procedente de la Corte de Distrito de Ponce.

No. 461.—Resuelto en febrero 10, 1913.

DERECHO PENAL—JURISDICCIÓN—INCONSTITUCIONALIDAD DE UNA LEY.—La inconstitucionalidad de una ley no constituye falta de jurisdicción, sino de que el hecho imputado no es legalmente penable.

ID.—DESERTOR DE PRESIDIO—SITIO DONDE OCURRE.—JURISDICCIÓN—La jurisdicción para conocer del delito de deserción de un presidiario prevista en el artículo 152 del Código Penal, corresponde a la corte de distrito del distrito en donde ocurre la fuga y nó a la corte que condenó al desertor.

Los hechos están expresados en la opinión.

Abogado del Pueblo: *Sr. Charles E. Foote, Fiscal.*

El apelado no compareció.

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

El Fiscal de la Corte de Distrito de Ponce presentó en ella una acusación contra Angel Ruiz *alias* Mora, imputándole que el día 18 de marzo de 1912, en momentos en que trabajaba como confinado del presidio en los trabajos de la carretera de Barceloneta en el Distrito Judicial de Arecibo, maliciosa e ilegalmente desertó de dichos trabajos, alegando que al verificar la fuga se hallaba legalmente encarcelado en la Penitenciaría de San Juan, P. R., y accidentalmente en la carretera de Barceloneta, en virtud de sentencia dictada en 31 de octubre de 1891 por la Corte de Distrito del Distrito Judicial de Ponce, en causa que se siguiera por robo y por la que fué con-

denado a la pena de cuatro años, seis meses y un día de presidio.

Al presentarse por el Fiscal esa acusación solicitó de·la corte que se expidiera por el secretario un mandamiento de arresto contra el acusado para que respondiera del cargo que se le formulaba, y dicha corte por resolución de 2 de julio de 1912 denegó el mandamiento de arresto del acusado y decretó el sobreseimiento de la causa, por estimar que no tiene jurisdicción para conocer del delito que se imputa en la acusación, por los siguientes fundamentos: (*a*) que el delito, según resulta de la misma acusación, no se cometió dentro de la jurisdicción de la corte; y (*b*) que no hay precepto alguno legal, que sea válido y eficaz que establezca sanción penal por la comisión de dicho delito.  Para explicar su resolución, el juez de la corte escribió una extensa opinión.

Esa resolución fué apelada para ante nosotros por el Honorable Fiscal de la corte inferior y sostenida aquí por el de esta Corte Suprema, quien, tanto en su informe escrito como en el oral trató extensamente la cuestión de constitucionalidad de la ley, y, después de alegar solamente que la Corte de Distrito de Ponce tiene jurisdicción para conocer del delito acusado, porque ella fué la que dictó la sentencia original contra Angel Ruiz *alias* Mora, concluyó pidiendo la revocación de la resolución apelada.

Aun cuando el juez de la corte inferior sostiene que no tiene jurisdicción para conocer del presente caso, como segunda razón, por la inconstitucionalidad de la ley, este fundamento no es en realidad constitutivo de falta de jurisdicción, sino de que el hecho acusado no es legalmente penable.  Por consiguiente, las dos razones o fundamentos que tiene el juez para sostener que carece de jurisdicción, son dos cuestiones distintas e independientes: una, que el delito no se cometió dentro de la jurisdicción territorial; y la otra, que aunque hubiera sido realizado dentro de su demarcación el hecho imputado no es penable.

Aclarado esto, la primera cuestión que surge y que debe resolverse es si en realidad la Corte de Distrito de Ponce tiene jurisdicción para conocer del delito imputado al acusado, cuando la evasión que se pretende castigar fué realizada en Barceloneta, que corresponde al Distrito Judicial de Arecibo.

El artículo 152 del Código Penal que prevee y castiga la fuga de una persona de la prisión donde estuviere cumpliendo condena, dispone que será castigada por orden sumaria del tribunal competente; y en vista de los términos de la ley se sostiene por el apelante que tal tribunal es el que dictó la sentencia quebrantada.

Nada encontramos en la ley ni en el alegato del apelante que sostenga esa tesis y por el contrario el artículo 8 del Código de Enjuiciamiento Criminal determina que la jurisdicción correspondiente a los delitos radica en la corte de distrito del respectivo distrito judicial dentro del cual se cometieren. El artículo 82 del mismo texto, en sus apartados 1º. y 4º. establece que la acusación es suficiente si de ella se deduce que ha sido presentada ante un tribunal que tenga autoridad para recibirla y que el delito fué cometido en un lugar comprendido dentro de la jurisdicción del tribunal, excepto cuando el hecho, aunque haya sido realizado fuera del término jurisdiccional de la corte, puede ser juzgado dentro de él. Así pues, la regla general es que todo delito debe ser juzgado en el distrito en que se cometiere, y la excepción es cuando la ley confiere expresamente jurisdicción a una corte para conocer de delitos cometidos fuera de su territorio; y como el presente caso no figura en ninguno de los de exención taxativamente mencionados por la ley, ha de regirse por la regla general consignada en el artículo 8 citado y por consiguiente, habiendo sido realizado el acto imputado como delito en la carretera de Barceloneta, que no está dentro de la demarcación de la Corte de Distrito de Ponce, carece ésta de jurisdicción para conocer del delito imputado a Angel Ruiz *alias* Mora.

No teniendo, pues, jurisdicción la corte ante la cual se presentó la acusación, es ocioso que consideremos el segundo fundamento en que se apoyó el juez de la corte inferior al dictar su resolución apelada, el que hubiera sido procedente tratar en el caso contrario y sin que pueda entenderse que nuestra abstención de considerarlo ahora implique asentimiento o discordancia con el parecer del juez en ese particular.

Por el fundamento expresado en esta opinión la resolución apelada debe ser confirmada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y del Toro.

El Juez Asociado Sr. MacLeary firmó haciendo constar estar conforme con la sentencia solamente.

OPINIÓN CONCURRENTE DEL JUEZ ASOCIADO SR. MACLEARY.

Estando conforme, como lo estoy, con que la resolución dictada por la corte sentenciadora en este caso sea confirmada, aunque no estoy de acuerdo con la forma en que las cuestiones envueltas en el presente caso han sido consideradas en la opinión de la corte, me veo obligado a formular un voto concurrente para expresar en él mis propias consideraciones.

El día 21 de julio último el juez de distrito de la Corte de Distrito de Ponce dictó en este caso la siguiente resolución:

"Por las razones expresadas en la opinión emitida separadamente en este caso, que se hace parte de esta resolución, la corte deniega el mandamiento de arresto que se solicita, y decreta el sobreseimiento de esta causa con las costas *de oficio.*"

Contra esta resolución el Fiscal de la corte de distrito interpuso apelación, la cual está ahora sometida a nuestra consideración para su resolución.

En la acusación por virtud de la cual se trató de arrestar al acusado, se alegaron en sustancia los siguientes hechos:

que Angel Ruiz *alias* Mora, había cometido un delito grave
(*felony*) porque el día 18 de marzo del corriente año, el acu-
sado, en momentos en que trabajaba como confinado del pre-
sidio en los trabajos de la carretera de Barceloneta del Dis-
trito Judicial de Arecibo, maliciosa e ilegalmente desertó de
dichos trabajos; que dicho acusado al verificar la fuga se
hallaba sufriendo un término legal de prisión en el presidio
de San Juan, Puerto Rico, y estaba accidentalmente en la
carretera de Barceloneta trabajando en los caminos públicos.

El apelado no compareció ante este Tribunal Supremo ni
se presentó alegato alguno a su favor. Probablemente confía
en que se confirme la sentencia por virtud de la opinión emi-
tida por el juez de distrito y en la que se fundó la resolución
que se dictó a su favor. El Fiscal ha presentado un minucioso
informe o alegato, habiendo también argumentado el caso
oralmente en el acto de la vista que tuvo lugar el día 30 de
octubre último. La resolución del juez de distrito, según apa-
rece de su opinión, se fundó en dos cuestiones: Primera. Que
el delito según resulta de la misma acusación no se cometió
dentro de la jurisdicción territorial de la corte inferior, y
Segunda. Que no hay precepto legal alguno o principio que
sea válido y eficaz en la actualidad, que establezca sanción
penal por la comisión del delito imputado en la acusación. El
juez sentenciador hizo un estudio extenso y detenido de estas
dos cuestiones en una opinión voluminosa contenida en los
autos, resolviendo que ambas favorecían al acusado. El Fis-
cal de esta corte aunque de paso hace alguna referencia a la
primera cuestión, sólo ha argumentado la segunda ante este
tribunal, que envuelve la constitucionalidad del artículo 152
del Código Penal que se alega está en conflicto con la enmienda
catorce de la Constitución de los Estados Unidos, porque niega
al acusado la protección de las leyes que es igual para todos.
El Fiscal no hace mucha referencia en su alegato a la cuestión
de jurisdicción territorial que fué la primera que se presentó
en la opinión del juez sentenciador.

Se ha dicho que es innecesario en el presente caso consi-

derar la cuestión constitucional a la cual ha prestado tanta atención la corte sentenciadora, y que bajo otras circunstancias que no aparecen claramente indicadas, dicha discusión hubiera sido pertinente. Ciertamente que no es mi ánimo emprender una tarea inútil u ocuparme en una discusión impertinente. Pero no considero que tales sean los deberes de las cortes de apelación. Incumbe a éstas el corregir los errores en que hayan incurrido las cortes inferiores, ya por la prisa en la celebración del juicio o por otras circunstancias. Según mi humilde criterio, es impropio para una corte de último recurso el eludir la consideración y resolución de cualquiera cuestión importante que haya sido debidamente presentada en los autos y que surja propiamente de la ley y los hechos del caso tal como fué juzgado en la corte inferior. Los autos, según se formaron en la corte inferior, han sido presentados a la serena consideración de la corte de apelación; y el abogado versado en la ley, después de un estudio cuidadoso, discute las cuestiones envueltas y hace citas de autoridades en apoyo de sus argumentos, solicitando la resolución de cada una de las cuestiones, no solamente con el fin de guiar a la corte inferior en el desenvolvimiento sucesivo del caso que le ha sido sometido, sino también para que la opinión de la corte superior pueda tenerse presente en la determinación de otros casos semejantes que puedan surgir en lo sucesivo. No solamente se deberá prestar debida consideración a las opiniones y discusiones de la corte sentenciadora, sino también las de los abogados que postulan ante ellas, y no deberá prescindirse de ellas por ser consideradas como impertinentes. Las cortes de último recurso son algo más que máquinas automáticas destinadas a producir sentencias con respecto a casos que han sido aglomerados de cualquier modo en el receptáculo de sus calendarios. He creído conveniente discutir las cuestiones planteadas en los autos que han sido presentadas en este caso, por el orden de su importancia; si bien la última cuestión que ha sido discutida es aquella en la que se ha fundado la sentencia. En un caso muy parecido, el Juez Presidente Sr.

Marshall, siguió igual plan.   En la contienda famosa de *Marbury* v. *Madison*, 5 U. S. (1 Cranch), 154, él presenta una discusión en la forma siguiente:

"Según el orden que ha tenido presente la corte con respecto a esta materia, las siguientes cuestiones han sido consideradas y resueltas:   Primera. ¿Tiene el solicitante el derecho al nombramiento que reclama?   Segunda. Si tiene derecho y el mismo ha sido infringido, ¿le proporcionan algún remedio las leyes de su país?   Tercera. Si le proporcionan un remedio, ¿es éste un *mandamus* que proceda de este tribunal?"

Se ha visto que el caso envuelve la cuestión de la expedición de un *mandamus* por la Corte Suprema de los Estados Unidos.   La corte resolvió que habiendo sido nombrado Marbury juez de paz del Distrito de Columbia, tenía derecho a un nombramiento como tal, y que, teniendo dicho derecho, las leyes del país le proporcionaban un remedio; y que un auto de *mandamus* podía propiamente ser expedido contra el Secretario de Estado para obligarle a entregar el nombramiento; pero que la ley del Congreso por la que se trataba de conferir jurisdicción original a la Corte Suprema en tales casos era inconstitucional; y finalmente que la Corte Suprema no tenía jurisdicción del caso.   La muy notable discusión sustentada por el más distinguido abogado que jamás ha adornado aquel más alto tribunal podría ser considerada por algunos como "ociosa e impertinente"; pero tal no es el criterio adoptado por la mayor parte de los abogados americanos y las centenares de cortes del Continente, que por los últimos ciento diez años han citado con aprobación esa luminosa opinión adoptándola en cientos y quizás miles de casos.   Puede ser que mi criterio sea incorrecto, pero estoy satisfecho en equivocarme con el juez Marshall, más bien que estar de acuerdo con aquellos que consideran como anticuada y que no merece consideración su modo de tratar las cuestiones legales.

Estas cuestiones serán consideradas según el orden de su

importancia: Primera. La relativa a la constitucionalidad del estatuto, y segunda, la cuestión de jurisdicción territorial.

El juez de la corte de distrito declara que el artículo 152 de nuestro Código Penal está en conflicto con la Constitución de los Estados Unidos por no asegurar al acusado la protección de la ley que es igual para todos. Es conveniente que se tenga presente que las cortes, y hasta el Tribunal Supremo de los Estados Unidos, por lo general son muy refractarias a declarar que una disposición legislativa es inconstitucional y por consiguiente nula y sin ningún valor; sin embargo, cuando el caso se presenta en debida forma y surge la cuestión con respecto a la significación de la ley que rige al caso pendiente, cualquier contradicción o conflicto irreconciliable entre la Constitución de los Estados Unidos o la constitución de un Estado o la ley orgánica de un Territorio, y una ley decretada por la legislatura, deberá resolverse dando efecto a los principios que establecen que la constitución de un Estado es superior a un estatuto del mismo Estado y que la Constitución de los Estados Unidos y las leyes del Congreso aprobadas de conformidad con la misma constituyen la ley suprema del país, y todos los jueces están obligados por ella, no obstante cualquier disposición contenida en la constitución de un Estado o en cualquiera disposición legislativa de un Estado en sentido contrario. Constitución de los Estados Unidos, Art. VI, Sec. 2. Evidentemente que es innecesario expresar que cualquier estatuto de Puerto Rico que esté en conflicto con la constitución americana o la ley orgánica no puede ser declarado válido.

Muchos suponen que las cortes por iniciativa propia asumen la obligación de declarar nulas las leyes de la legislatura, alegando solamente como razón para ello que son inconstitucionales. En realidad las cortes no proceden así; pero todas las cortes deben, al resolver cualquier caso pendiente, estar convencidas primeramente de cual es la ley que rige a dicho caso, y todas las cortes y jueces prestan juramento de obedecer la Constitución de los Estados Unidos y la constitución de

los diferentes Estados, debiendo por tanto dar efecto a las leyes según aparecen redactadas, ya hayan sido éstas aprobadas por el pueblo en su capacidad soberana o por la legislatura debidamente elegida por el mismo. Cuando resulta que dos estatutos o leyes escritas ya sean constitucionales o estatutarias, están en conflicto, no pueden ambas a la vez ser *la ley* y desde luego la superior debe prevalecer a la inferior. Por tanto, cuando la Constitución de los Estados Unidos resulta claramente infringida por una ley de la legislatura de un Estado o Territorio, la última es nula *ipso facto* y de ningún valor. Esto no sucede así porque la corte la declare nula, sino que es simplemente considerada así debido a la incompatibilidad que existe entre la misma y la ley que es superior y a la cual está subordinada. Toda esta cuestión ha sido hábilmente considerada y resuelta de una vez en el caso de *Marbury* v. *Madison,* a que se ha hecho referencia anteriormente en esta discusión.

Pero generalmente las cortes sentenciadoras deben mostrarse más refractarias que las otras cortes en declarar una ley incompatible con la Constitución, o como decimos generalmente, *inconstitucional.* Resulta algo extraño que cualquiera corte en la celebración de un caso que parece estar fuera de su jurisdicción territorial, se extralimite en sus facultades para anular un estatuto en el que se define el delito que se imputa al acusado en el juicio y declararlo en conflicto con la Constitución. · Alguna excusa puede presentarse por el hecho de declarar de tal modo válida una ley que ha sido combatida por ser contraria a la ley orgánica de la nación o del territorio. La legislatura tiene la misma obligación que las cortes de obedecer la Constitución, al decretar las leyes, y se presume que tan respetable organismo bajo ningún concepto pasará ninguna ley a sabiendas que esté en conflicto con la constitución; y la opinión legislativa sobre la materia merece gran importancia y consideración, especialmente por las cortes inferiores que tienen la obligación de interpretar y poner en vigor las disposiciones legislativas.

Aunque las cortes de apelación se muestran refractarias a declarar una ley de la legislatura inconstitucional o en conflicto con la ley suprema del país, sin embargo, deben necesariamente hacerlo así, cuando la ley que contiene tal defecto ha sido razonable y equitativamente sometida a su consideración en un caso que pende ante las mismas. Como generalmente o casi siempre puede interponerse recurso de apelación contra las sentencias dictadas por las cortes inferiores a las cortes superiores, dichas cortes inferiores no tienen necesidad de prestar tanta atención a las cuestiones de esta naturaleza como lo hacen las cortes de apelación, debiendo generalmente interpretar y hacer cumplir los estatutos tal y como los mismos aparecen redactados en las leyes aprobadas por la legislatura, y dejar que las cuestiones constitucionales sean resueltas en apelación por las cortes superiores.

En el presente caso el juez sentenciador hace un estudio comparativo de nuestro estatuto con los de California e Idaho, y si bien no encuentra ninguna sentencia en California que de modo directo trate sobre la materia, halla, sin embargo, un caso de Idaho que según su criterio es completamente satisfactorio y exige que nuestro estatuto que ahora consideramos sea declarado inconstitucional. El caso en que se funda es el de *Mallon, ex parte,* 16 Idaho, 737; 22 L. R. A. N. S., 1123; 102 Pac., 374. La opinión en este caso ha sido citada por la corte sentenciadora extensamente, y se refiere a un caso de Kansas titulado *State* v. *Lewin,* 53 Kansas, 679; 37 Pac. Rep., 168, en el que se sostiene la conclusión a que ha llegado la Corte Suprema de Idaho. Dicha distinguida corte de justicia citó en su sentencia, entre otras razones y observaciones, las siguientes:

"La segunda y tercera objeciones que han sido formuladas al estatuto serán consideradas en conjunto, las que, a nuestro juicio, presentan la verdadera e importante cuestión envuelta en este caso, o sea, ¿niega el estatuto igual protección a todas las personas a quienes se imputa una infracción del mismo, y constituye esto una legislación no equitativa y que está a favor de determinada clase? Se

verá que el castigo que ha de imponerse con arreglo a su estatuto depende enteramente de la sentencia que el convicto esté sufriendo en la fecha en que verifique la fuga. Si un convicto está sufriendo una condena de un año y se escapa, al ser declarado culpable de dicha fuga debe ser condenado a sufrir un año más a partir de la fecha en que expira la primera sentencia. Si un prisionero está sufriendo condena de veinte años y se escapa, al ser declarado culpable de dicha fuga debe ser condenado a sufrir un término adicional de veinte años desde la fecha en que vence la primera sentencia. Un castigo por el término máximo o mínimo dentro del cual la corte tiene la discreción de fijar dicho castigo según la gravedad del delito no está permitido. El delito no está dividido en grados, a menos que se diga que el grado del delito se fija por la sentencia cuyo cumplimiento el prisionero trata de eludir. El Attorney General sostiene esta alegación y alega que el estatuto gradúa el castigo de conformidad con el delito por el cual el prisionero se encontraba sufriendo condena en la fecha de la fuga y que esto es una clasificación razonable y adecuada. Creemos que puede enunciarse como proposición general de ley, que toda persona tiene derecho a igual protección de la ley y que igual protección de la ley significa que todos en igualdad de circunstancias deberán tener la misma protección y seguridad en su vida, su libertad y su propiedad y en busca de su felicidad, así como a que se le exima de cualesquiera obligación o deber que sean mayores de aquellos que se imponen a las demás personas en igualdad de circunstancias. 8 Cyc., 1058, 1059; *Barbier* v. *Connolly*, 113 U. S., 27, 5 Sup. Ct., 357, 27 L. ed., 924.

"* * *.

"Dos convictos que se fugan de la penitenciaría del Estado en el mismo día, de común acuerdo y precisamente bajo las mismas circunstancias y en igualdad de condiciones recibirían un castigo enteramente distinto. Si uno de ellos había sido recluído por un término de seis meses, su castigo sería aumentado a seis meses solamente, mientras que el otro que pudiera estar confinado por veinte años, sería condenado a un nuevo término de prisión por dicho número de años, y así sucesivamente, si se han impuesto diferentes sentencias por distintos períodos. El defecto de este estatuto consiste en que el carácter o naturaleza del delito no constituye la base sobre la cual se fija la duración de dicho castigo.

"* * *.

"La alegación de que es más perjudicial a la sociedad la persona que ha estado sufriendo una larga condena que la que ha sufrido

una condena corta, si se fuga de la penitenciaría, no es una alegación a nuestro juicio que está fundada en la razón o en las leyes o condiciones naturales, y no es tampoco una razón natural por la que deba imponerse un castigo mayor a la persona que se fuga de la penitenciaría mientras está sufriendo una larga condena, que la que se impone a otra persona que está recluída por un corto tiempo. Pero el castigo que de tal modo se fija por la fuga es arbitrario, injusto, contrario a la razón natural y no está fundado de modo alguno en la naturaleza, carácter o gravedad del delito. Que a nadie se obligará a sufrir mayores castigos que aquellos que se imponen a los demás en igualdad de circunstancias, significa que dicha protección se extenderá a toda persona en todas partes, sin que para nada se tenga en cuenta su posición en la sociedad, o condición de vida, ya viva en el pueblo o en el campo, y cualquiera que fuere la casa en que habite y por humilde o elevada que ésta sea. El decir que la frase 'en igualdad de circunstancias' debe considerarse como que comprende (aplicándola a los hechos de este caso) a todas las personas que sufren iguales sentencias, sería equivalente a expresar que el delito que cometen al realizar la fuga está relacionado con cuestiones que no están comprendidas en la naturaleza o carácter de dicha fuga. La frase 'en igualdad de circunstancias,' aplicada a una fuga, parece establecer una distinción con respecto a si dicha fuga se verificó pacíficamente y sin oponer resistencia, o por medio de fuerza o violencia, o mediante falsas simulaciones, amenazas, soborno, o promesa de recibir algún beneficio, o alguna clasificación natural con relación al delito; pero una distinción fundada en la naturaleza de la sentencia que se esté cumpliendo, es a nuestro juicio arbitraria e irracional, y constituye una verdadera infracción de las disposiciones contenidas en la constitución de este Estado y la Enmienda 14 de la Constitución de los Estados Unidos que garantiza a todas las personas igual protección ante la ley.

"* * *.

"Nosotros, sin embargo, debemos considerar este estatuto tal como se encuentra redactado, y al considerarlo así se verá que el castigo se fija arbitrariamente y no queda en manera alguna sometido a la discreción del tribunal sentenciador. Si la legislatura en su sabiduría—que indudablemente es sabia—desea fijar un castigo por las fugas o tentativas de fuga de la prisión del estado, tal legislación sería simple y no necesita en manera alguna ser complicada para llegar a los fines que se desean. Podría ser aplicable a todas las personas que se fugan o tratan de fugarse de la prisión del estado

y el castigo puede fijarse teniendo en cuenta la naturaleza, o carácter del delito, o sea, si el esfuerzo empleado fué pacífico, la gravedad del delito sería menor que si fuera violento y con amenazas; y la duración del castigo puede encomendarse a la corte sentenciadora con un término mínimo y máximo que se señale, entre los cuales la corte puede ejercitar su discreción como se dispone ordinariamente para los delitos públicos, y en tal caso las objeciones constitucionales al estatuto no podrían entonces formularse.'' Mallon, *ex parte,* 16 Idaho, 737; 102 Pac., 374; 22 L. R. A., N. S., 1123.

Es cierto que otras consideraciones e ilustraciones se mencionan en la discusión contenida en la opinión de la Corte Suprema del Estado con respecto a la validez del estatuto de Idaho, pero los párrafos anteriores contienen, al parecer, la esencia del argumento. He hecho citas extensas de esta opinión no solamente por la alta consideración que se tiene del Tribunal Supremo de Idaho, sino también porque uno de mis colegas parece entender que esta sentencia podría ser aplicable a un caso como el que está sometido a nuestra consideración.

Si comparamos el estatuto de Idaho, artículo 6452 de los estatutos revisados de ese Estado con el artículo 152 de nuestro Código Penal, veremos que existe una completa diferencia entre ambos. El estatuto de Idaho es como sigue:

''Todo confinado en la penitenciaría del Estado por un término menor al de cadena perpetua que se fuga de dicha prisión, será castigado con prisión en la penitenciaría del Estado por un término igual en duración al que se encontraba sufriendo cuando se fugó; dicho segundo término de prisión empezará desde la fecha en que hubiera sido puesto en libertad si no se hubiera fugado.''

El estatuto de Puerto Rico es a saber:

CÓDIGO PENAL.—''Artículo 152.—Toda persona que se fugue de una prisión mientras estuviera cumpliendo condena, será castigada por orden sumaria del tribunal competente, con prisión por un término adicional mínimo de una vigésima parte, o máximo de una quinta parte de la primitiva sentencia.''

Se verá que el estatuto de Idaho es considerado como arbitrario, y el Juez Asociado Señor Stewart se refiere a él en su opinión, considerándolo como "irrazonable, contrario a lo natural, y que no está basado en la naturaleza, carácter, o gravedad del delito," porque no concede a la corte inferior facultad discrecional alguna con respecto al castigo que ha de imponerse por la fuga y su duración, sino que lo considera igual al que se impuso por el delito del cual se encontraba cumpliendo condena el preso. Nuestro estatuto concede al tribunal sentenciador, por el contrario, discreción para fijar un término de prisión por la fuga que no sea menor de una vigésima parte de aquel que se le impuso en la anterior sentencia, ni mayor de la quinta parte de la misma, confiriendo así dicho estatuto una gran amplitud al juez al fijar el castigo y eliminando, por consiguiente, del estatuto el oprobio de ser arbitrario, irrazonable, contrario a la razón natural y por no fundarse en la naturaleza, carácter o gravedad del delito. No toma tampoco la corte de Idaho en consideración el hecho de que el convicto que realizó la fuga, le debe al Estado, cuyas leyes ha infringido, el término de prisión al cual ha sido condenado, y que con su fuga defrauda al pueblo de igual manera que si se hubiera apropiado los fondos públicos, en cuyo caso su castigo se graduaría en cierto término con arreglo a la suma apropiada. El delito de hurto se divide generalmente en hurto de mayor cuantía y hurto de menor cuantía, según el valor de la propiedad robada. Por consiguiente, me parece que la opinión de la Corte Suprema de Idaho, por correcta que sea, no es aplicable a nuestro estatuto, y, por tanto, no debemos tomarla en consideración.

No es necesario que consideremos las enmiendas que de tiempo en tiempo se ha hecho al Código de California, así como las razones en que supone la corte sentenciadora que las mismas se fundan. Creyendo, como creo, que no existe nada en nuestro código en conflicto con la Enmienda Catorce de la Constitución de los Estados Unidos o con alguna otra ley superior, me veo obligado a sostener que el artículo 152

de nuestro Código Penal es constitucional y está en todo su fuerza y vigor.

Ahora pasaré a considerar la segunda cuestión que ha sido sometida a nuestra consideración y que envuelve la cuestión relativa a la jurisdicción territorial de la corte de distrito, que apenas ha sido discutida por el Fiscal en su informe y que aparece ligeramente considerada en la opinión de la corte sentenciadora. Examinemos en primer término los estatutos. El artículo 8 de nuestro Código de Enjuiciamiento Civil es como sigue: ''La jurisdicción correspondiente a los delitos radica en la Corte de Distrito del respectivo distrito judicial dentro del cual se cometieron,'' y los párrafos 1 y 2 del artículo 82 del propio código dicen lo siguiente: 1°. ''Que ha sido presentada ante un tribunal que tenga autoridad para recibirla, aunque el nombre del tribunal no se exprese en ella.'' 2°. ''Que la acusación haya sido suscrita y presentada al tribunal por el Fiscal del distrito en que el tribunal esté actuando.''

Según estos estatutos, se verá que solamente la corte de distrito del lugar en donde se comete el supuesto delito, tiene jurisdicción para conocer del mismo. Este criterio está sustentado por sentencias de las cortes de Pennsylvania y California. Es la jurisdiccion del lugar en que se cometió el delito, lo que da derecho a seguir una causa contra el delincuente sin que para nada se tenga en cuenta la jurisdicción de la corte, por la cual el prisionero fué sentenciado a su primitiva prisión. De modo que un prisionero que se escape de una cárcel de un Estado puede ser acusado por ello en la corte del Estado, aun cuando esté bajo custodia a virtud de una orden de arresto expedida por las cortes de los Estados Unidos. *Com.* v. *Ramsey*, 1 Brew. Pa., 422; *People* v. *Ah Teung*, 92 Cal., 421; 28 Pac., 577; 15 L. R. A., 190; 16 Cyc., 543. He considerado cuidadosamente esta cuestión en un caso fallado recientemente en una causa de seducción que fué resuelta por la Corte de Distrito de Guayama y apelada para

ante este tribunal.   Véase *El Pueblo* v. *García,* 18 D. P. R., 844.

Fundado en los razonamientos de aquel casó y en las autoridades en el mismo citadas, debe declararse que era la Corte de Distrito de Arecibo y no la de Ponce la que tenía jurisdicción para conocer del delito imputado en el caso que ha sido presentado ante este tribunal.   Habiéndose el prisionero escapado de la carretera ae Barceloneta, perteneciente al distrito judicial de Arecibo, la jurisdicción está conferida a dicha corte.   Por este fundamento la resolución dictada por la Corte de Distrito de Ponce debe ser considerada como correcta.

Tomando en consideración las cuestiones discutidas en esta opinión así como la ley aplicable a los hechos de este caso, la resolución de la Corte de Distrito de Ponce dictada en el presente caso el día 2 de julio de 1912, debe ser confirmada.