[No. 27243. Department One. January 3, 1939.]

THE STATE OF WASHINGTON, *Respondent,* v.
FRED HARTZELL WEST, *Appellant.*[1]

[1]Reported in 86 P. (2d) 192.

*Fred Hartzell West, pro se.*

*B. Gray Warner* and *John M. Schermer,* for respondent.

ROBINSON, J.—On July 21, 1937, in a trial before the Honorable Robert M. Jones, a judge of the superior court of King county, the appellant, Hartzell West, was found guilty of the crime of robbery. A motion in arrest of judgment and for new trial was at once interposed by his then attorney, Will Lanning, supported by affidavits. Counter-affidavits were filed on behalf of the state. On October 16, 1937, the motion was denied by the trial judge, and judgment and sentence was, on motion of the state, postponed, pending the disposition of an habitual criminal charge filed the same day.

In this supplemental information drawn against the appellant as Hartzell West, alias Fred H. West, it was charged that, prior to the conviction of robbery, West had been convicted in the state of Oregon on March 17, 1924, of knowingly uttering and publishing a forged bank check, and, in Seattle, on September 5, 1930, of burglary in the second degree. In the trial on this information, heard before the Honorable Howard M. Findley, judge of the superior court of King county on April 14, 1938, Will Lanning having withdrawn as his counsel, the defendant conducted his own defense, assisted by Charles W. Johnson, Jr., a regularly licensed attorney of good standing appointed by the court. The jury returned special verdicts, finding West had been duly and legally convicted at each of the prior times as charged, and a general verdict, finding him to be an habitual criminal. To this verdict was appended a statement, signed by the foreman of the jury, which

reads as follows: "The jury unanimously ask the court to extend extreme leniency."

A motion for a new trial was duly filed. On April 28, 1938, the motion was denied, and West was sentenced to life imprisonment. Oral notice of appeal from the judgment and sentence was given in open court.

The particulars in the foregoing statement are taken from a transcript of the records of the court.

If we are to accept the appellant's statement as true, he requested the presiding judge of the superior court to appoint an attorney to assist him on the appeal, and the request was refused, on the ground that there was no statute authorizing such an appointment. At any rate, no attorney of record appeared for him in this court. The appellant, according to his own statement, prepared his own briefs, assisted informally by some attorney whose name is not disclosed. He orally argued the case before us with such ability and understanding as to make it rather difficult to believe that he has not had, at least, the rudiments of a legal education.

His assignment of errors is as follows:

"(1)   The court erred in failing to grant a continuance.

"(2)   The court erred in refusing to substitute competent counsel.

"(3)   The court erred in not allowing dark glasses to be introduced as rebuttal evidence.

"(4)   The court erred in not allowing a gun—the same manufacture, type, size and appearance as described by state's witness Rogers, to be introduced as rebuttal evidence.

"(5)   The prosecuting attorney was guilty of gross misconduct:

"(a)   He blocked the defendant's efforts to prove his innocence through legitimate channels.

"(b)   He deliberately made false assertions extremely prejudicial to the defendant.

"(c)   He was guilty of instilling undue prejudice resulting in unjust condemnation.

"(6)   Evidence presented by the state was insufficient to justify the verdict.

"(7)   Habitual criminal act as practiced is unconstitutional and the court erred in not allowing the jury to return a verdict of 'not guilty' to being an habitual criminal."

There is no statement of facts in the record.   There is a handwritten document, signed by the appellant, which appears, from the file mark of the clerk of King county, to have been filed on June 17, 1938.   The first division of this document, headed "Statement of the Case," contains two pages purporting to relate what happened at the trial of the habitual criminal charge. This is followed by one page "Assignment of Errors," which is followed by a general title "Statement of Facts," covering the trial on the original information concerning the robbery.   This is told on three pages, and is followed by seven pages labelled "Argument." The document is signed by the appellant, but is not certified in any manner; nor are the matters which are sent here, purporting to be exhibits, certified to or in any way officially made a part of the record.

■   It follows, of course, that we cannot consider any of the assignments, except, possibly, the seventh. Obviously, we cannot accept the bare personal word of the appellant as to what occurred at the trial regarding his application for continuance (Assignment 1); or concerning the court's refusal to substitute counsel (Assignment 2); or that the court erred in rejecting evidence (Assignments 3 and 4); or that the prosecuting attorney was guilty of gross misconduct (Assignment 5); or that the evidence presented by the state was insufficient to justify the verdict (Assignment 6).

■   In view of the fact that appellant is appealing from a life sentence and acting as his own attorney, we

have given the record most careful consideration. Plainly, there is but one alternative; either to affirm the judgment and sentence or to take some extraordinary and unprecedented step, such as remanding the matter to the trial court with some sort of a direction looking to the ultimate preparation and transmittal to this court of a certified statement of facts or, at least, the certification of the statement prepared by the appellant. Assuming that we have the power to do that, the question is: Do the circumstances show that the power ought to be exercised? In answering this question, we are at liberty to consider everything in our files bearing upon the matter.

The rule which requires the appellant in a criminal case to file a certified statement of facts or bill of exceptions with the clerk of this court within sixty days after appeal is taken is a salutary one, enacted to insure that punishment for crime shall not be too long delayed, and thus, in some degree, fail of its purpose. Our reports are replete with cases where it has been rigidly enforced. No exception to it should be allowed, unless, at least, there is a very clear showing that to enforce it would constitute a denial of justice.

It is clear from our records that the appellant was well aware of the necessity of the certification and of the time limit involved. We find in our files a letter addressed by him to the chief justice of this court on June 17, 1938, in which he recites that he has filed in the lower court a requested statement of facts; and further says:

"I request that upon the receipt of the transcript of the Clerk's record, an order be entered extending time for completion of the record until such a time as the Superior Court rules upon my proposed Statement of Facts.

"Being confined in jail and without a lawyer, it is impossible for me to force the Judge to act."

To this letter the chief justice replied, in part:

"After your notice of appeal and the transcript are on file, you can make an application to this Court for extension of time within which to have your statement of facts certified and filed. Such request, however, should be supported by an affidavit stating the reason for such request."

On July 8, 1938, a letter was addressed to the court by Will G. Beardslee, a Seattle attorney, containing such an affidavit; Mr. Beardslee explaining, however, that he was not appearing as appellant's attorney, but was forwarding the affidavit at the request of the liaison officer of the Disabled American Veterans of the World War. The enclosed affidavit was executed by the appellant on June 30th. It recited the imposing of sentence, the giving of notice of appeal, the filing of a proposed statement of facts on June 17th, and that Judge Jones on that day ordered the clerk of the superior court to prepare and certify a complete transcript of all papers in the case, including minute entries, and to send the same to the supreme court as a transcript on appeal, without expense to appellant; and further recited that affiant, being in custody,

". . . does not have counsel, other than voluntary assistance given in the preparation of this affidavit; that through no fault of affiant he is, and has been, unable to have the proposed statement of facts certified in time to file the same with the Clerk of the Supreme Court within sixty days from the notice of appeal and by reason thereof affiant requests that the time be extended for the filing and certifying of appellant's proposed statement of facts."

Although the time for filing in the supreme court had already passed, the chief justice, in view of the unusual circumstances of the case, made an order on the

13th of July extending the time. This order reads, in part, as follows:

"It Is Hereby Ordered that the time for certifying and filing appellant's proposed statement of facts with the Clerk of the above entitled court be and it is hereby extended until the 25th day of July, 1938."

Mr. Beardslee was notified of the entry of the order and the exact terms thereof and a copy of that letter was sent to the appellant himself, and there is incontrovertible evidence in the record he received it in due course.

The case was set for hearing here on September 15th. On September 10th, motions were filed by the state for a continuance and to strike the statement of facts. The court entered an order giving the state until September 13th to file its brief, and the appellant, ten days to answer, but, on the appellant's objection to the continuance, kept the case on the calendar. The motion to strike was passed to the merits.

The filing of a motion to strike brought a rejoinder from the appellant to the effect that, on June 10th, Mr. Henry C. Agnew, a then deputy prosecuting attorney, had offered to assist him in preparing his appeal; that some days later (apparently, on June 17th), he took his papers to Mr. Agnew, who thereupon pinned them together, and wrote at the top of the first page, "Defendant's Requested Statement of Facts," and told him to file the document with the county clerk and dictated a letter to the clerk requesting him to file a copy of the transcript of his records with the clerk of the supreme court. Regarding the statement of facts, the appellant said:

"If this statement of facts was not properly certified, then, indeed, it is the prosecutor's own fault, for I followed his instructions to the letter."

But, as we have shown, the application later made on appellant's behalf by Mr. Beardslee and enclosing his own affidavit of June 30th establishes beyond all question that he knew that the statement of facts had to be certified within a certain definite time, and that he was not at all relying upon Mr. Agnew or any other member of the prosecutor's staff to attend to that matter.

In his requested statement of facts, his briefs, and in his oral argument, the appellant exhibited a thoroughgoing familiarity with all those artful methods by which persons charged with crime so often successfully win public sympathy. It is altogether within the bounds of possibility that, not having much confidence in his appeal, he deliberately concluded not to perfect it, in the belief that its dismissal by this court, on account of a defective record, would better serve him, in that he would be able to add to his complaints, as to alleged glaring injustices suffered at the hands of the trial courts, that this court refused to consider his cause on technical grounds, and that he is being held to a life sentence simply and only because he did not possess the legal skill to properly prepare his appeal.

The matter cannot properly be characterized as technical. It is altogether impossible to review his case without knowing what occurred at the time, and for that we cannot take the word of the appellant himself, and we have no other. This court, as has been shown, extended the time for furnishing a proper record upon the appellant's own application. Although he was granted ample time for the purpose, there is no showing whatever that he ever even attempted to have his proposed statement certified. For the reasons shown, we cannot accept his claim that he depended upon the prosecuting attorney for its certification. We find no circumstances which would warrant us in adopting an

unprecedented and extraordinary course in dealing with this matter.

█ The seventh assignment raises a question of law. The appellant contends that the habitual criminal statute (Laws of 1909, chapter 249, p. 899, § 34, Rem. Rev. Stat., § 2286 [P. C. § 8721]) is unconstitutional, in that the prosecuting attorney is not therein required to file an habitual criminal charge against all individuals who have been three times convicted; that is, that he has the power to elect to charge some individuals falling within that category, and not to charge others. But, under the information system, the equivalent criticism may be made of all criminal statutes. Furthermore, the question raised is one of policy, not of constitutionality.

The judgment and sentence of the trial court is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and BLAKE, JJ., concur.