[No. 43956.   En Banc.   December 30, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. PRESS LEE, JR.,
*Appellant*.

*Lish Whitson* of *Seattle-King County Public Defender* and *David Shorett*, for appellant.

*Christopher T. Bayley, Prosecuting Attorney*, and *Edward L. Douglas, Jr.*, and *Thomas Wolfendale, Deputies*, for respondent.

*Robert E. Schillberg, Prosecuting Attorney,* and *David G. Metcalf, Deputy,* amici curiae.

HAMILTON, J.—Appellant, Press Lee, Jr., appeals the trial court judgment which declared him a habitual criminal pursuant to RCW 9.92.090.[1] Appellant challenges the constitutionality of the habitual criminal statute and assigns error to a number of evidentiary rulings by the trial judge.

In September 1973, appellant was charged and convicted of robbery. Respondent, the State of Washington, subsequently filed a supplemental information seeking an adjudication that appellant was a habitual criminal. The information also alleged five felonies,[2] including the recent robbery conviction. Appellant filed a motion to dismiss the information, and the trial court denied the motion. On May 10, 1974, a jury found appellant to be a habitual criminal. Appellant appealed both the denial of the motion to dismiss and the trial court judgment which declared him a habitual criminal. The Court of Appeals certified the case to this court, and we assumed jurisdiction.

█ Initially, appellant claims the habitual criminal statute is an unconstitutional delegation of legislative authority. RCW 9.92.090 is not a delegation of the legislature's power to determine appropriate punishment for criminal violations. The statute merely vests the prosecution with the power to charge a person with the status of a habitual criminal. The prosecution must prove its allegations beyond a reasonable doubt. Implicit within the statute is a reason-

---

[1]RCW 9.92.090, in part, provides:

"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life."

[2]Prior to the robbery conviction, appellant was convicted of two burglaries in the second degree, robbery, and assault in the second degree.

able standard to govern the prosecuting attorney's exercise of discretion to initiate these proceedings. The decision to prosecute must be based on the prosecutor's ability to meet the proof required by the statute. *State v. Anderson*, 12 Wn. App. 171, 174, 528 P.2d 1003 (1974); *State v. Williams*, 9 Wn. App. 622, 625, 513 P.2d 854 (1973); *see State v. Zornes*, 78 Wn.2d 9, 23, 475 P.2d 109 (1970); *State v. Canady*, 69 Wn.2d 886, 891, 421 P.2d 347 (1966). We consider the statute a proper legislative investiture of authority to the executive branch. *State v. Anderson, supra; State v. Williams, supra.*

■ Appellant also contends respondent violated his due process rights and bases this contention on the premise that his habitual criminal status was determined solely by the prosecution. Appellant minimizes the importance of the supplemental criminal trial, which provides him with the right to counsel, the right to subpoena witnesses, the right to discover evidence, the right to a trial by jury, and the right to cross-examine witnesses. In *State v. Anderson, supra* at 174, the court stated:

> Defendant also contends he was deprived of liberty without due process of law because he was not provided with an opportunity to be heard at the prosecutor's meeting where the decision to file a habitual criminal information is made. We disagree. A defendant suffers no "deprivation" as a consequence of the prosecutor's decision to allege habitual criminal status. His deprivation occurs only when and if the prosecutor proves the allegation at trial, where the defendant is afforded the full range of due process protections.

Respondent utilizes an efficient procedure to determine which individuals will be charged with habitual criminal status. *State v. Nixon*, 10 Wn. App. 355, 356-57, 517 P.2d 212 (1973), outlines this procedure:

> Charges involving defendants whose criminal records indicate they would meet the King County prosecutor's criteria for habitual criminal status have been assigned to deputies whose responsibility it is to determine whether the defendants were represented by counsel at the time of their prior convictions, the amount of time between

those convictions, the nature and facts of the previous convictions, the availability of the necessary documents and the means for establishing the identity of the defendant as the person who committed the previous crimes. The deputy to whom the prosecution of the candidate for habitual criminal status has been assigned also prepares a resumé of the pending charge and determines if possible, the extent of the defendant's criminal activity in the area.

This information is presented to a supervisors' meeting which determines whether an habitual criminal charge will be filed. The supervisors consider whether the habitual criminal status can be established, the severity of the present offense charged, the severity of past offenses and the frequency of offenses. In addition, consideration is given to the appropriate punishment, the opportunity for and possibility of rehabilitation and the potential danger of the defendant to the community.

Also, when a particular individual is considered for a possible habitual criminal charge, his attorney is given an opportunity to submit any information to the prosecutor he considers beneficial to his client. Appellant was given this opportunity to submit additional information. Thus, both the habitual criminal trial and respondent's office procedure satisfied the requirements of the due process clause. *Accord, State v. Lei*, 59 Wn.2d 1, 4, 365 P.2d 609 (1961); *State v. Jackovick*, 56 Wn.2d 915, 917, 355 P.2d 976 (1960); *State v. Fowler*, 187 Wash. 450, 452, 60 P.2d 83 (1936); *State v. Edelstein*, 146 Wash. 221, 250, 262 P. 622 (1927); *State ex rel. Edelstein v. Huneke*, 140 Wash. 385, 392, 249 P. 784 (1926); *State v. Anderson, supra* at 174; *State v. Nixon, supra* at 357-61; *State v. Matte*, 1 Wn. App. 510, 513-14, 462 P.2d 985 (1969); *see Graham v. West Virginia*, 224 U.S. 616, 56 L. Ed. 917, 32 S. Ct. 583 (1912); *Oyler v. Boles*, 368 U.S. 448, 456, 7 L. Ed. 2d 446, 82 S. Ct. 501 (1962); *Poe v. State*, 251 Ark. 35, 470 S.W.2d 818 (1971) (collecting cases); 39 Am. Jur. 2d *Habitual Criminals and Subsequent Offenders* § 5 (1968).

█ Appellant next contends the statute deprives him of equal protection under the law. Appellant points to statistics which indicate respondent does not prosecute all eligi-

ble individuals under the habitual criminal statute. The prosecutor declines to prosecute many of the eligible individuals because he cannot meet the proof requirements of the statute.[3]

In *Oyler v. Boles, supra* at 456, the United States Supreme Court declared a similar statute constitutional and stated:

> Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.

The Oregon Supreme Court also upheld the constitutionality of its statute in *State v. Hicks*, 213 Ore. 619, 325 P.2d 794 (1958). The court stated at page 637:

> We do find that there has been laxity in the enforcement of the habitual criminal law but mere laxity is not and cannot be held to be a denial of the equal protection of the law. If the failure of prosecutors to enforce the criminal laws as to some persons should be converted into a defense for others charged with crime, the result would be that the trial of the district attorney for nonfeasance would become an issue in the trial of many persons charged with heinous crimes and the enforcement of law would suffer a complete breakdown.

In the present case, respondent did not select appellant on the basis of some unjustifiable standard such as race, religion, or other arbitrary classification. Respondent selected appellant because he clearly meets the requirements of RCW 9.92.090. Thus, the statute does not deny appellant

---

[3]A particular problem confronts the prosecuting attorney in meeting the requirements of the statute. In *Burgett v. Texas*, 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258 (1967), the Supreme Court held that the prosecution cannot use a prior conviction in a habitual criminal proceeding if the defendant was not represented by counsel at all critical stages of the proceedings. A number of eligible individuals have at least one pre-1967 conviction, and certified copies of these convictions may not indicate whether the defendants were represented by counsel at all stages of the criminal proceedings. *See State v. Montague*, 10 Wn. App. 911, 921, 521 P.2d 64 (1974).

equal protection of the law. *Accord, State v. Lei, supra* at 4; *State v. Jackovick, supra* at 917; *State v. West,* 197 Wash. 595, 86 P.2d 192 (1939); *State v. Edelstein, supra* at 250; *State v. Anderson, supra* at 174; *State v. Nixon, supra* at 357-61; *State v. Williams, supra* at 625; *State v. Matte, supra* at 513-14; *see Graham v. West Virginia, supra; Poe v. State, supra;* 39 Am. Jur. 2d *Habitual Criminals and Subsequent Offenders* § 5 (1968).

■ Appellant's sentence does not constitute cruel and unusual punishment. The life sentence contained in RCW 9.92.090 is not cumulative punishment for prior crimes. The repetition of criminal conduct aggravates the guilt of the last conviction and justifies a heavier penalty for the crime. *State v. Miles,* 34 Wn.2d 55, 61-62, 207 P.2d 1209 (1949); *see Graham v. West Virginia, supra* at 623. Appellant's prior convictions were for robbery, two burglaries in the second degree, and assault in the second degree. He received the life sentence for the second robbery conviction. His punishment is not disproportionate to the underlying offense.[4]

Appellant assigns error to a number of evidentiary rulings by the trial judge. Appellant claims respondent did not properly authenticate a number of exhibits. Exhibits 1 and 2 are records of the Department of Social and Health Services. Each exhibit consists of: (1) an attestation by the custodian; (2) a certification of the custodian by the Secretary of State; (3) a photograph; (4) fingerprint records; (5) a copy of the judgment and sentence of King County Superior Court; and (6) a copy of the warrant of commitment. The trial court admitted exhibits 1 and 2 for the purpose of establishing the identity of appellant as the individual convicted of the two crimes.

---

[4]Appellant relies on *Hart v. Coiner,* 483 F.2d 136 (4th Cir. 1973), to support his position that the life sentence constitutes cruel and unusual punishment. The *Hart* case is factually distinguishable from this case. There, defendant was given a life sentence under the habitual criminal statute for a perjury conviction. His two prior crimes were writing a check for insufficient funds and transporting a forged check across state lines. The life sentence in *Hart* was disproportionate to the underlying offenses.

CR 44(a)(1) prescribes a method of authenticating documents:

(a) **Authentication.**
(1) *Domestic*. An official record . . . may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that such officer has the custody. The certificate . . . may be made by any public officer having a seal of office or official custody of the seal of the political subdivision and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of his office or the seal of the political subdivision.

The director of the Department of Institutions must maintain these exhibits as part of his official records. *State v. Kelly*, 52 Wn.2d 676, 328 P.2d 362 (1958). RCW 43.20A.210 transferred all powers of the director of the Department of Institutions to the secretary of the Department of Social and Health Services. The secretary is now the legal custodian of the Department of Social and Health Services' records, and he may delegate his custodial duties to subordinates. RCW 43.20A.110; CR 44(a); *see* RCW 43.20A.220. In *State v. Hodge*, 11 Wn. App. 323, 329, 523 P.2d 953 (1974), the court stated:

[A]dministrative processes would come to an abrupt halt if the director had no authority to delegate to a subordinate at least those custodial responsibilities which are necessary to certify the accuracy of copies of records which the department regularly maintains in the performance of its statutory responsibilities. We hold, therefore, that the director . . . does have authority to subdelegate to another the custodial responsibilities which the legislature has delegated to him, to the extent that a designated subordinate may be authorized to certify the accuracy of departmental records.

In this case, the secretary delegated his custodial responsibility to an assistant who provided the trial court with the attested copies of appellant's records. The Secretary of State certified the assistant as the legal custodian, and he

affixed his seal to the certification.[5] Respondent satisfied the requirements of CR 44(a), and the trial court properly admitted the exhibits.

Appellant also claims respondent did not properly authenticate exhibits 3 through 6, which are superior court records of appellant's prior convictions. CR 44(c) provides:

This rule does not prevent the proof of official records or of entry or lack of entry therein by any other method authorized by law.

CR 44(c) preserves authentication by other means, including RCW 5.44.010, which states:

The records and proceedings of any court of the United States, or any state or territory, shall be admissible in evidence in all cases in this state when duly authenticated by the attestation of the clerk . . . or other officer having charge of the records of such court, with the seal of such court annexed.

The clerk of the superior court is the official custodian of the records of court proceedings and may delegate his custodial authority to deputies. RCW 36.16.070; see State v. Hodge, supra. In the instant case, a deputy clerk certified exhibits 3 through 6 and affixed the clerk's seal. The requirements of RCW 5.44.010 were satisfied, and respondent properly authenticated these records.[6]

■ Appellant also claims the trial court admitted irrelevant testimony. Evidence is relevant when it logically tends to prove a fact in issue. State v. Gersvold, 66 Wn.2d 900, 902-03, 406 P.2d 318 (1965); State v. Hults, 9 Wn. App. 297, 513 P.2d 89 (1973). The trial court allowed an officer to testify and identify appellant as the person he investigated

[5] Appellant also objects to the admission of exhibits 1 and 2 because they contain a number of pages stapled together, and the certification of the exhibits only appears on page 1 of the exhibits. Page 1, however, describes each page of the exhibits and the attestation and certification clearly apply to the subsequent pages.

[6] Each exhibit satisfied the requirements of Burgett v. Texas, 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258 (1967), in that the judgment specifically identifies appellant's counsel in the prior criminal proceedings. Finally, there is no proof that any of the prior convictions are presently on appeal.

for two criminal violations. This testimony tends to identify appellant as the person who committed the crimes. We find no error in allowing the testimony.

Appellant's remaining contentions concern the trial judge's voir dire of the jury. The trial judge asked the jurors if they had served at the time of appellant's robbery conviction and questioned them as to their knowledge of the prior robbery trial. Appellant maintains these questions prejudiced the jury, because the statute requires respondent to prove appellant's prior convictions. The record indicates the judge carefully explained to the jury that the prior convictions were allegations which respondent must prove beyond a reasonable doubt.

Appellant also contends the trial judge improperly instructed the jury during voir dire. We disagree. The judge merely followed CrR 6.4(b)[7] and explained the nature of the case to the jury.

The judgment is affirmed.

.STAFFORD, C.J., and HUNTER, WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., concur.

ROSELLINI, J. (dissenting)—The majority by its opinion has converted the prosecutorial discretion doctrine into absolute discretion on whether a prosecutor shall prosecute a guilty person. It is my view that, under the habitual criminal statute, the prosecutor does not have any such discretion.

An exhibit in the case disclosed a total felony conviction in 1972 and 1973 of 3,500 cases. Approximately 15 percent of this total were eligible for habitual criminal status. However, approximately one-tenth of one percent were charged as habitual criminals.

A psychiatrist testifying at the trial said:

> It was my opinion, with all due respect to the office of the prosecutor, that the method of selection of something like ten out of 510 potential people as candidates for

---

[7]CrR 6.4(b) states, in pertinent part: "The judge shall initiate the voir dire examination by identifying the parties and their respective counsel and by briefly outlining the nature of the case."

being labeled habitual criminals was arbitrary, capricious and irrational, and it didn't—it was not consistent with what little we do know about the accurate prediction of future criminality.

Under such circumstances, prosecutorial discretion regarding punishment under the habitual criminal statute constitutes an abuse of prosecutorial discretion and a violation of equal protection of the laws.

Does the prosecuting attorney have prosecutorial discretion where the proof of guilt is beyond any doubt and can be proven? The question answers itself. Let us suppose that a murder is committed in broad daylight, witnessed by many; that the murderer is apprehended at the scene with a smoking revolver in his hand; that the experts testify that the bullet which killed the victim came from the murderer's gun, and that the evidence would further prove that the murderer did not have an arguable defense.

Can anyone rationally argue that the prosecuting attorney has prosecutorial discretion to refuse to prosecute? The same situation applies under the habitual criminal statute. The State must prove its case by certified copies of previous convictions, and by fingerprints and pictures to prove that the defendant is the same person who committed previous crimes. Under such circumstances the defendant does not even have an arguable defense. Should the prosecuting attorney then have prosecutorial discretion to refuse to prosecute? Under the statute, it is mandatory and a direct charge on the prosecuting attorney to prosecute.

The prosecuting attorney does have prosecutorial discretion where the evidence of previous conviction is either difficult to prove or questionable, or the conviction has been obtained without aid of counsel at previous convictions. But where the proof is clear and uncontradicted, it is an abuse of prosecutorial discretion not to prosecute.

One of the greatest discontents with the criminal justice system is that of selective law enforcement. The citizens lose respect for the law and the criminal system because they know that violations of the law will not result in sanctions and the criminal law will affect only those who

do not have status in society or be left to the whim of a public official.

It does great violence and gives lie to one of our greatest concepts, "equal justice under the law," for under selective prosecution there is no equal justice and some people are more equal or unequal than others.

I believe in total law enforcement. If the laws are unjust they will be repealed; if the laws are just, the burden of obeying will fall upon everyone equally. It is argued that selective law enforcement is justified on the grounds of practicality. It is argued that it is not practical to enforce the law because we do not have the manpower or the money, or the institutions to incarcerate the guilty. We justify selective law enforcement because we don't like a law or a violation of the law is considered not too serious. But practicality does violence to equal protection.

To my mind, the failure of the criminal justice system and why it is held in disrespect, is brought about by selective law enforcement, which in turn destroys the citizens' faith in equal justice under the law and the certainty of punishment for crimes.

RCW 9.92.090, the statute under which the appellant is charged, provides that

> [e]very person convicted in this state . . . of any felony, who shall previously have been [twice] convicted . . . of any crime which under the laws of this state would amount to a felony, . . . shall be adjudged to be an habitual criminal and . . .
> . . . shall be punished by imprisonment in the state penitentiary for life.

The statute thus makes clear that *every* person who falls into the category set forth in the statute *shall* be sentenced to life imprisonment. This statute is mandatory and requires that the prosecutor file the supplemental information charging *every* person convicted of a felony who has two previous felony convictions with a habitual criminal charge. It does not say that certain persons may be charged and others may not and gives no standards under which discretion might be exercised.

It is to be noted that statutes in derogation of common law must be strictly construed and that statutes with punitive effects must be strictly construed against the State and in favor of the accused. *State v. Wait,* 9 Wn. App. 136, 509 P.2d 372, 65 A.L.R.3d 578 (1973); *State v. Lewis,* 46 Wn.2d 438, 282 P.2d 297 (1955); *Seattle v. Green,* 51 Wn.2d 871, 322 P.2d 842 (1958).

U.S. Const. amend. 14 provides:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The purpose of the Fourteenth Amendment, to secure the equality of treatment for all persons, prohibits the use of prosecutorial discretion in determining which persons, given a set of persons with two prior felonies and a current felony conviction, shall be sentenced to life imprisonment and which shall not. There is a series of cases in Washington in which prosecutorial selectivity has been held to be a violation of equal protection. In *Olsen v. Delmore,* 48 Wn.2d 545, 550, 295 P.2d 324 (1956), the uniform firearms act was held unconstitutional because it authorized prosecuting attorneys to charge violations of the fact as either a gross misdemeanor or a felony. The court held that the uniform firearms act was so worded that the choice of punishment could rest with the charging authorities. In holding that this violated the equal protection clause of the fourteenth amendment to the United States Constitution and article 1, section 12, of the Washington State Constitution, the court stated:

A statute which prescribes different punishments or different degrees of punishment for the same act committed under the same circumstances by persons in like situations is violative of the equal protection clause of the fourteenth amendment of the United States Constitution.

Here, it is not the statute which prescribes different pun-

ishment for the same act "committed under the same circumstances by persons in like situations", but it is the *policy* of the prosecuting attorney in choosing to impose "different degrees of punishment" for persons in virtually similar circumstances which is a violation of the equal protection clause. In *State v. Collins*, 55 Wn.2d 469, 470, 348 P.2d 214 (1960), where the State charged the defendant with manslaughter in a vehicular homicide case, the defendant moved to dismiss on the ground that the negligent homicide statute was preemptive. The trial court dismissed and the Supreme Court affirmed. The court held

> that in all cases where the negligent homicide statute is applicable, it supersedes the manslaughter statute. This not only accords with the rules of statutory construction, but is the interpretation necessary to satisfy the requirements of the fourteenth amendment to the Federal constitution requiring equal protection of the law for all persons.

The court discussed prosecutorial discretion regarding punishment in *State v. Zornes*, 78 Wn.2d 9, 24, 475 P.2d 109 (1970). The court cited with approval the following passages concerning the law of equal protection:

> Generally speaking, the law with respect to the punishment to be inflicted for a crime must operate equally on every citizen or inhabitant of the state, and a statute is void as a denial of the equal protection of the laws which prescribes different punishments or different degrees of punishment for the same acts committed under the same circumstances by persons in like situation.

16A C.J.S. *Constitutional Law* § 564 (1956).

> That no one shall be subject to any greater burdens or charges than such as are imposed upon all others under like circumstances, means that such protection shall be extended to every person and everywhere without reference to his position in society, or station in life; whether he lives in town or the country, or whatever color may be the house in which he lives, or whether humble or imposing in structure.

*In re Mallon*, 16 Idaho 737, 748, 102 P. 374 (1909).

The existence of two prior convictions are "like circum-

stances," according to the *Zornes* language. The exercise of prosecutorial discretion to impose a heavier burden upon appellant than upon others in like circumstances is neither authorized by the statute nor is it in conformance with equal protection of the laws.

In *State v. Williams*, 9 Wn. App. 622, 625, 513 P.2d 854 (1973), the Court of Appeals stated:

> Every person convicted in this state . . . of any felony, who shall previously have been twice convicted, . . . of . . . a felony, . . . shall be punished by imprisonment in the state penitentiary for life [RCW 9.92.090].

and accordingly, no guidelines are needed. *The prosecuting attorney's decision must be based upon his ability to meet the proof required by the statute. State v. Canady*, 69 Wn.2d 886, 421 P.2d 347 (1966).

(Italics mine.)

The testimony by members of the prosecuting attorney's office made it unmistakably clear that with regard to habitual criminal proceedings, its decision is not based upon its ability to meet the proof required by the statute, rather this decision is based on a number of unrelated factors. This testimony also made it clear that the office does intentionally discriminate in its enforcement of the statute. The testimony demonstrated that there was a direct violation of the holding in *Williams* in the instant case.

I do not agree with *State v. Nixon*, 10 Wn. App. 355, 517 P.2d 212 (1973), and *State v. Anderson*, 12 Wn. App. 171, 528 P.2d 1003 (1974), where the appellate court ruled that selective enforcement of the statute by the prosecuting attorney was not unlawful. Mysteriously, the opinions made no reference to the *Williams* case. Assuming arguendo that *Williams* is superseded by *Nixon*, and that some selectivity may be exercised by the prosecutor, *Nixon* makes it clear that such selectivity may not be exercised in the absence of rational justifiable standards, and that arbitrary selectivity and the use of unjustifiable standards will render such a process constitutionally void for lack of equal protection of the laws. As stated in *Oyler v. Boles*, 368 U.S. 448, 7 L. Ed.

2d 446, 82 S. Ct. 501 (1962), and *Poe v. State*, 251 Ark. 35, 470 S.W.2d 818 (1971), both of which are relied upon in the *Nixon* case, arbitrary classification and unjustifiable standards used in selection of individuals to be charged is unconstitutional.

The fact that the prosecutor may exercise this selectivity with apparently beneficent motives does not alter the fact that if it is done arbitrarily and without justifiable standards it is constitutionally defective. We should be mindful of the admonition given by the United States Supreme Court in *Baggett v. Bullitt*, 377 U.S. 360, 373, 12 L. Ed. 2d 377, 84 S. Ct. 1316 (1964): "Well-intentioned prosecutors and judicial safeguards do not neutralize the vice of a vague law." In the more recent case of *Papachristou v. Jacksonville*, 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972), the court noted that where there are no standards governing the exercise of discretion granted by a statute, the scheme permits and encourages arbitrary enforcement of the law.

Is the selective process used by the prosecuting attorney's office arbitrary and based upon unjustifiable standards? The evidence in this case shows that the prosecutor's office makes its initial selection of whom to consider out of those "eligible" in a completely arbitrary, hit-and-miss manner, totally without standards of any kind. The office is not even aware of which individuals coming through the system have current third felonies and it is only by chance or by virtue of a detective's or deputy's subjective judgment that such a person comes to its attention. Further, once someone has come to the attention of the prosecutor's office, its decision as to whether to file a charge is based on very limited objective facts, including past offenses, current offense, whether the individual has served time in an institution, whether the sentencing judge will commit him to the penitentiary for the third felony, and a few other facts. There is no psychiatric study, the parole or probation officer who often has intimate knowledge of the individual is rarely if ever consulted for his

opinion, there is no prediction table based upon scientific evidence, and numerous other factors which should be considered in making such an ultimate decision are not considered. They do not keep *any* records other than a vote count on those considered. The prosecution has no objective basis then for predicting future conduct using objective standards, yet they exercise the power to say "X" should be excluded from society for a life term but not "Y." Subjective determinations based on guesswork, sentencing an individual to life imprisonment, and taking the sentencing function away from a judge and the parole board, are not reasonable justifications for selecting certain individuals and not others. *Oyler v. Boles, supra.* Arbitrary classification and the use of unjustifiable standards occur, where the mood or method of tabulating votes of a meeting of senior deputies in the prosecutor's office—a meeting of adversaries, with a bias and without the advice of the prosecuting attorney—determines whether a given individual shall be excluded from society for life rather than another in similar circumstances.

The prosecutor's office then has the best of both worlds —rather than charge *all* those convicted of three felonies or more and then have a trial related to proof of the convictions, they get to pick and choose and then have their court proceedings and claim the defendant is afforded the same due process as anyone else facing a "criminal" trial.

Until the record discloses some rational basis for selective prosecutions and shows a majority of the habitual criminals are proceeded against, I would reverse on the ground of violation of equal protection of the laws.

UTTER, J., concurs with ROSELLINI, J.

Petition for rehearing denied February 4, 1977.