[No. 4978-1.   Division One.   December 19, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. CHESTER
MERRITT CLARK, JR., *Appellant.*

*Helen Wilson* and *Gilbert H. Levy,* for appellant
(appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and
*Michael P. Ruark, Deputy,* for respondent.

JAMES, J.—Following conviction of defendant Chester
Merritt Clark, Jr., of two counts of second-degree burglary,
the State invoked habitual criminal proceedings. Clark

appeals only from the habitual criminal sentence entered after a bench trial. We affirm.

Clark first challenges the sufficiency of the State's evidence identifying him with one of the three prior burglary convictions relied upon by the State. Exhibit 13 is a certified copy of a judgment and sentence entered on January 21, 1972, in King County cause No. 59156. To identify Clark as the "Chester Merritt Clark" named in that judgment and sentence, the State offered exhibit 16, containing the records of the Adult Corrections Division of the Department of Social and Health Services for "Chester Merritt Clark" as certified by the legal custodian of records. The exhibit includes a copy of the judgment and sentence evidenced in exhibit 13 (cause No. 59156) and a copy of the warrant of commitment referring to it, also dated January 21, 1972. Also included in exhibit 16 is a fingerprint card and photographs of Clark taken at the corrections facility. The fingerprint card, however, includes a reference to a June 1, 1970, burglary conviction and parole violation and not the 1972 conviction entered in cause No. 59156. It is this reference which Clark seizes upon to argue that his identification with the conviction in cause No. 59156 was not proved.

Clark points out that in *State v. Harkness,* 1 Wn.2d 530, 542, 96 P.2d 460 (1939), our Supreme Court opted to follow one of "two lines of decisions" and held that evidence establishing "identity of names alone" is not sufficient to make a prima facie case of "identity of person" facing a habitual criminal charge.[1]

Here, however, both the fingerprint card and the photograph card indicate that they were prepared on February 1, 1972. This was 11 days after sentence in cause No. 59156. The attestation by the custodian of records recites that the

---

[1] In *State v. Alexander,* 10 Wn. App. 942, 521 P.2d 57 (1974), this court, without reference to *Harkness,* but citing *State v. Le Pitre,* 54 Wash. 166, 103 P. 27 (1909), held that identity of name on the exhibits with that of the defendant in court constituted prima facie evidence of identity of person. *State v. Le Pitre* was distinguished in *State v. Harkness.*

documents contained in exhibit 16 "are copies of the original records of Chester Merritt Clark, a person heretofore committed to said penal institution and who served a term of imprisonment therein."

Clark contends that "[t]he fingerprint card and picture show no contention [to the] judgment and sentence [in cause No. 59156] and in fact refer to a parole violation." He argues that "[t]here is no connecting identification from the photograph to the judgment and sentence required by *State v. Matte*, 1 Wn. App. 510, 462 P.2d 985 (1969) to establish a prima facie case of identification." We do not agree.

As the State points out, exhibit 16 involves more than just a fingerprint card and a photograph. It contains as well a copy of the judgment and sentence in cause No. 59156 and a copy of the warrant of commitment. Additionally, Clark's prison identification number appears on the photograph card, and fingerprint card, the warrant of commitment, and the judgment and sentence. The certification "[t]hat the Judgment and Sentence, Warrant of Commitment, fingerprint card and photo, attached hereto are copies of the original records of Chester Merritt Clark, . . ." is competent evidence that the Chester Merritt Clark, Jr., identified by fingerprints and photographs is the man who was serving the sentence imposed in cause No. 59156 on January 21, 1972. *State v. Reed*, 56 Wn.2d 668, 354 P.2d 935 (1960); *State v. Kelly*, 52 Wn.2d 676, 328 P.2d 362 (1958).

The identity of Clark as the person named in the judgment and sentence entered in cause No. 59156 was a question of fact. The trial judge's finding of identity is based upon substantial evidence.

Clark's second challenge is that Washington's habitual criminal procedure, as provided by RCW 9.92.090 and as administered by the King County Prosecutor, denied him due process of law as guaranteed by the United States and the Washington Constitutions. In summary, Clark's argument is that the *significant* phase of a habitual criminal

proceeding is *not* the trial (at which the sole issue is whether a defendant has accumulated the required number of convictions), but *is,* rather, the procedure which is utilized by a prosecutor to determine whether to institute the proceedings.

At the omnibus hearing, Clark sought disclosure of the convictions upon which the prosecutor intended to rely and a statement from the prosecution concerning the "criteria or standards used in making [the] decision to file habitual criminal charges and [the] names of all persons participating in the proceedings where [the] decision was made." Clark also sought disclosure of

[a]ny and all information in possession of the prosecuting attorney [or] which by the exercise of due diligence might become known to the prosecuting attorney, relating to those individuals who have been charged under the same statute [as] is the defendant sub judice, including, but not limited to, the sex, race, age, and number of prior convictions of those charged.

He also asked for "any and all information relating to those persons who could have been charged under the statute that the defendant is charged [under] and were not." The ruling at the omnibus hearing was that the State would be required to provide only transcripts of the convictions which would be used by the State to establish Clark's status as a habitual criminal and also "furnish criteria or standards used in making [the] decision to file habitual criminal charges [against Clark] and [the] names of all persons participating in the proceedings where [the] decision was made."

In compliance with the ruling, the prosecutor made known to Clark convictions upon which the State intended to rely and also provided him with a deputy's written memorandum used by the prosecutor which included a resumé of his present offense, his prior record, his prospects for rehabilitation, and a recommendation that habitual criminal proceedings be instituted. Clark's subsequent motion to dismiss the habitual criminal proceedings

because of failure to comply fully with the order to produce was denied.

In his argument, Clark analogizes the King County Prosecutor's procedure (for determining which defendants shall be proceeded against as habitual criminals) to a parole revocation hearing. He then relies upon *Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972) in contending that due process required he have had notice and an opportunity to participate in the proceedings to perhaps persuade the prosecutor that habitual criminal status would be inappropriate.

█ In summary, the rule of *Morrissey v. Brewer* is that parole revocation does not call for the full panoply of rights due a defendant in a criminal proceeding, but does involve significant values within the protection of the due process clause of the Fourteenth Amendment. Termination of a parolee's liberty requires at least an informal hearing at which he may participate to give assurance that the finding of a parole violation is based on verified facts to support the revocation. Although we are aware that in *State v. Anderson*, 12 Wn. App. 171, 528 P.2d 1003 (1974) and *State v. Lee*, 87 Wn.2d 932, 558 P.2d 236 (1976), it is held that constitutional "due process" and "equal protection" do not require "an opportunity to be heard at the prosecutor's meeting where the decision to file a habitual criminal information is made" (*State v. Anderson, supra* at 174), Clark's challenge cannot be summarily dismissed.

A habitual criminal proceeding is a juridical anomaly. It combines some characteristics of a criminal trial and some characteristics of a sentencing. The fact that prosecutors exercise discretion in determining whether to invoke habitual criminal penalties (though RCW 9.92.090 provides that *every* person qualified "*shall* be punished by imprisonment in the state penitentiary for life" (italics ours)) lends substance to Clark's argument that "due process" and "equal protection" considerations are involved.

We hold, however, that Clark's thesis must be rejected. The critical distinction between a parole revocation hearing

and a prosecutor's habitual criminal "meeting" concerns the "interests" at stake. As pointed out in *Morrissey v. Brewer, supra* at 482, a *parolee's* critical interest in a parole revocation hearing is his liberty "and its termination inflicts a 'grievous loss' on the parolee and often on others." On the other hand, as *Morrissey* concludes at page 483, "the *State* has no interest in revoking parole without some informal procedural guarantees." (Italics ours.) The reason the State has no interest is that revocation of parole is not "so totally a discretionary matter that some form of hearing would be administratively intolerable."

The "interest" of a defendant which is at stake at a prosecutor's habitual criminal "meeting" is *not,* as in a parole revocation, the immediate loss of an extremely valuable privilege—the privilege to remain at liberty. What *is* at stake is the severity of a sentence to be imposed for a current conviction if a defendant's record of recidivism is established and if the trial judge does not choose to suspend or defer. *State v. Gibson,* 16 Wn. App. 119, 553 P.2d 131 (1976). The prosecutor's decision does not produce the immediate and severe impact of a parole board's decision to revoke.

The State, on the other hand, has a compelling interest in discouraging recidivism. For reasons too obvious to require discussion, legitimate interests of the State require that the prosecution must be afforded wide discretion as to the filing of criminal charges. The decision of when and whom to charge for what alleged crime necessarily requires the exercise of prosecutorial discretion. Our Supreme Court has consistently held that this statutory grant of discretionary power is not unconstitutional. *State v. Lee, supra.*

> The appellant contends that the habitual criminal statute [RCW 9.92.090] is unconstitutional, in that the prosecuting attorney is not therein required to file an habitual criminal charge against all individuals who have been three times convicted; that is, that he has the power to elect to charge some individuals falling within that category, and not to charge others. But, under the information system, the equivalent criticism may be made of

all criminal statutes. Furthermore, the question raised is one of policy, not of constitutionality.

*State v. West,* 197 Wash. 595, 603, 86 P.2d 192 (1939). To afford an accused the right to participate in a prosecutor's meeting at which the decision concerning the filing of a habitual criminal charge is made would impose an intolerable burden upon the prosecutor. Carried to its logical conclusion, Clark's thesis would impair the exercise of prosecutorial discretion at any stage of a criminal proceeding.

A habitual criminal proceeding is more analogous to a presentence report. The objective of both is the development of factual and subjective evidence which will legitimately relate to the type and severity of a sentence to be imposed.

A weighing of the interests at stake at a prosecutor's habitual criminal "meeting" requires the rejection of Clark's second challenge.

The judgment is affirmed.

WILLIAMS and CALLOW, JJ., concur.