[No. 46280. En Banc. April 17, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. EDGAR AMMON ROWE, *Petitioner*.

278

*Robert Olson* of *Seattle–King County Public Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Thomas E. Kelly, Jr., Senior Deputy,* for respondent.

STAFFORD, J.—On August 30, 1977, the defendant, Edgar Rowe, was convicted of unlawfully and feloniously possessing a narcotic drug with intent to manufacture or deliver the same. Thereafter, the King County Prosecuting Attorney filed a supplemental information, pursuant to RCW 9.92.090, alleging he was a habitual criminal. It was alleged defendant had been convicted of two prior felonies, *i.e.,* second–degree burglary in 1959 and robbery in 1972.

Prior to trial on the supplemental information, defendant moved to dismiss the habitual criminal charge asserting the prosecutor's written standards for filing the charges were unconstitutional.[1] The only evidence made available to the trial court was a written stipulation that the prosecuting attorney had used written standards to determine whether habitual criminal charges should be filed. A copy of the standards was attached to the stipulation. Based solely on the stipulation and the attached standards, the trial court ruled that defendant had been denied equal protection and due process of law under both the United States and Washington State constitutions. The supplemental information was dismissed. Defendant was sentenced on the narcotics charge without regard for the enhanced sentence authorized by RCW 9.92.090.

---

[1]The present King County Prosecuting Attorney's standards became effective on July 1, 1977. Two previous sets of standards promulgated by King County have withstood constitutional challenge. *State v. Lee,* 87 Wn.2d 932, 558 P.2d 236 (1976); *State v. Cooper,* 20 Wn. App. 659, 583 P.2d 1225 (1978).

The State appealed the order of dismissal assigning error to findings of fact Nos. 5 through 9 and the conclusions of law based thereon. The Court of Appeals reversed and remanded the trial court's order of dismissal. We granted defendant's petition to review the Court of Appeals decision.

We shall confine ourselves to the issue presented in the petition for review. Issues that are not raised in the petition will not be considered unless we conclude the solution of additional issues demands otherwise. *El Coba Co. Dormitories v. Franklin County PUD*, 82 Wn.2d 858, 860, 514 P.2d 524 (1973). The sole issue raised in defendant's petition for review is whether the King County Prosecutor's current standards for filing habitual criminal actions violate either due process or equal protection of the law. We hold the standards violate neither constitutional provision and affirm the Court of Appeals.

Primarily defendant's petition is based upon the trial court's findings of fact and conclusions of law. Thus, we must analyze them to determine the merit of defendant's position. Initially we note the trial court's findings stem exclusively from the stipulation and attached standards rather than from the testimony of witnesses. We are therefore not bound by the findings. Where the interpretation of a document must be made from the face of the instrument itself, this court is in as good a position as the trial court to interpret its meanings. *Angelus v. Government Personnel Life Ins. Co.*, 51 Wn.2d 691, 692, 321 P.2d 545 (1958); *In re Black*, 47 Wn.2d 42, 45, 287 P.2d 96 (1955); *see also In re Estate of Larson*, 71 Wn.2d 349, 354, 428 P.2d 558 (1967).

By way of general observation, we note the standards create two major classes of felonies for the purpose of applying RCW 9.92.090. The first category has been denominated "high impact" crimes. This class, composed of the most serious crimes encompasses such felonies as murder in the first and second degree, manslaughter in the first degree, rape in the first and second degree, robbery in the

first or second degree and extortion in the first degree. Included among "high impact" crimes is the possession or sale of narcotics or dangerous drugs valued at more than $1,000, the felony committed by defendant. All crimes included in this class have both a high societal impact and a serious personal impact upon the victims. The second category has been denominated "expedited" crimes. This category includes thefts of less than $500 from other than the person, burglaries from other than residences, forgeries, credit card thefts, malicious destruction of property and possession of small amounts of narcotics or dangerous drugs kept for personal use. For the most part, the latter class of felonies does not involve a threat of serious injury to the victim or a serious impact upon society. Between these two categories fall all the other felonies, none of which is at issue here.

Turning first to findings 5 and 7 we note the trial court determined the standards require that individuals who commit "high impact" crimes and who have two valid prior convictions *must automatically* be proceeded against as habitual criminals without regard for mitigating circumstances; conversely, persons last convicted of "expedited" crimes are *automatically excluded* from being charged as habitual criminals unless they fall within certain specified exceptions.[2] We do not agree. The source of the trial court's reasoning is undoubtedly section 1051 V A1 of the prosecutor's written standards which provides that "[a] habitual criminal allegation *shall* be made in *all* cases in which a defendant is both: a. presently charged with a high impact crime; and b. has at least two [constitutionally

---

[2]The trial court's finding of fact No. 5 provides:

"Under the standards as written, people who commit high impact crimes are automatically proceeded against as habitual criminals. Conversely, people who commit expedited crimes are automatically excluded from habitual criminal jeopardy, except pursuant to an exception policy."

Finding of fact No. 7 provides:

"Mitigating circumstances cannot be considered under the standards as written so that a person charged with a high impact crime with the requisite two prior felony convictions will always be proceeded against as an habitual criminal."

valid] felony convictions . . ." (Italics ours.) Additionally, section 1051 V A2 states: "A habitual criminal allegation shall not be made in any other case except pursuant to the exception policy". However, our reading of *all* the pertinent provisions of the standards convinces us that individuals who commit a "high impact" crime and who have two prior felonies *may, but need not* always be charged.

Section IV entitled EXCEPTIONS provides in pertinent part:

 A. WHEN ALLOWED
 1. Exceptions to these policies *may be made in any case . . .*

 . . .
 C. CRITERIA
 1. The following criteria for granting exceptions are not intended to be exclusive but as illustrative.
 2. *Less Severe Sanctions*
 a. Exceptions involving reduced degrees, *less loss of liberty* or the *dropping of special allegations* may be made:

 . . .
 (2) *where the defendant is able to provide* information or testimony that will reasonably *lead to the conviction of others* who are responsible for more serious criminal conduct or *who represent a greater danger to the public interest*;
 (3) *where specific factors present require the reduction or elimination of punishment on grounds of mercy*;
 (4) *where conviction* of the original charge *or imposition of* the minimum *punishment would constitute a manifest injustice.*

(Italics ours.)

The foregoing exceptions are not limited to "expedited" crimes. Section 1051 IV plainly provides that exceptions may be made in *any case.* Several nonexclusive illustrative examples are provided, any one of which would be applicable to "high impact" crimes.

■ Without question section 1051 V A1 provides that "[a] habitual criminal allegation *shall* be made in all [high impact crime] cases". (Italics ours.) It is clear, however, that the word *shall* must be considered directory rather than mandatory or the language of section 1051 IV A and C, which deals with exceptions applicable to *any case,* would be rendered meaningless. *See State v. McDonald,* 89 Wn.2d 256, 262–63, 571 P.2d 930 (1977). In addition, such a view would unnecessarily render the standards unconstitutional. If possible, such standards should be read in a manner consistent with the requirements of due process and equal protection. By way of analogy *see Hayes v. Yount,* 87 Wn.2d 280, 290, 552 P.2d 1038 (1976).

We also disagree with the trial court's determination, in finding of fact No. 6, that the standard's "exception policy for imposing *more* severe sanctions does not apply to the Habitual Criminal Procedures." The record is devoid of support for this position. The finding is contradicted by the exception's logical placement within the standard's scheme and by the plain language of section 1051 IV which encompasses the exceptions, their method of employment and the criteria for granting them. Section 1051 IV C3 specifically provides for the use of "More Severe Sanctions" as follows:

(1) where specific factors involving public safety make imposition of the specified period of loss of liberty inadequate to protect the public;

(2) where the sentence indicated by these policies would unduly depreciate the seriousness of the crime involved.

We now address findings 8 and 9 which are in reality mixed findings of fact and conclusions of law. In these the trial court concludes that the classifying of felonies as either "high impact" or "expedited" is an arbitrary and capricious method of selecting people to prosecute as habitual criminals.[3] We do not agree.

---

[3]The trial court's finding of fact No. 8 provides:

"The system of classifying crimes into high impact and expedited categories is arbitrary and without rational justification."

██ Arbitrary and capricious action has been defined as willful and unreasoning action, without consideration and in disregard of facts and circumstances. *DuPont–Fort Lewis School Dist. 7 v. Bruno,* 79 Wn.2d 736, 739, 489 P.2d 171 (1971). *See also McDonald v. Hogness,* 92 Wn.2d 431, 598 P.2d 707 (1979). Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached. *DuPont–Fort Lewis School Dist. 7 v. Bruno, supra; Miller v. Tacoma,* 61 Wn.2d 374, 390, 378 P.2d 464 (1963).

The mere act of classifying crimes is not arbitrary and capricious. Further, the classification of felonies as "high impact" and "expedited" crimes for the purpose of determining whether a habitual criminal charge should be filed is not only reasonable and logical, it permits an objective approach consistent with pragmatic and due process values. As we note above, "high impact" crimes are a class of serious felonies having both a high societal impact and a serious personal impact upon victims. Conversely, those felonies categorized as "expedited" crimes generally do not involve a threat of serious injury to the victim or a serious impact upon society. While it could be contended that a particular crime should be placed in a different category, it would be no more than an honest difference of opinion. An honest difference of opinion does not, however, support a finding of "arbitrary and capricious". This is particularly true since a conviction under one classification of crime or the other *does not automatically require the filing or prevent the filing of a habitual criminal charge.*

We turn finally to the trial court's conclusion that the standards deny defendant due process and equal protection of the law. We disagree with both propositions.

---

Finding of fact No. 9 provides:
"The classification scheme of the standards is an arbitrary and capricious method of selecting which people to prosecute as habitual criminals."

■ Insofar as due process principles are concerned, we again emphasize that the standards do not require an automatic filing of habitual criminal charges or prevent such an allegation under either "high impact" or "expedited" crimes. Second, contrary to defendant's assertion, the standard's use of exceptions denotes a recognition of prosecutorial discretion rather than its elimination. Section 1051 IV B, for example, provides specifically for the manner in which exceptions may be recommended by deputy prosecuting attorneys and approved by their superiors. Subsections 1051 IV C2 and 3 also provide criteria for the granting of exceptions that may result in either greater or less severe sanctions (*i.e.,* whether habitual criminal charges should be filed in the cases of either "high impact" or "expedited" crimes).

The written standards as thus interpreted fully provide the procedural due process recognized in *State v. Gilcrist,* 91 Wn.2d 603, 590 P.2d 809 (1979); *State v. Lee,* 87 Wn.2d 932, 558 P.2d 236 (1976); and *State v. Nixon,* 10 Wn. App. 355, 517 P.2d 212 (1973). The standards establish and employ two classes of criminal conduct, and exceptions thereto, to determine whether habitual criminal charges should be filed. As noted above, the classifications are both reasonable and logical. Moreover, the standards provide for prosecutorial discretion, thus permitting an individualized tempering of charges. The criteria and procedures applicable to the use of exceptions provide protection against arbitrary decisions. Deputy prosecuting attorneys must consult with their superiors before applying for more or less severe sanctions than those provided by the general rules. Further, although not required by *Lee, Gilcrist,* or *State v. Cooper,* 20 Wn. App. 659, 583 P.2d 1225 (1978), section 1051 IV C provides for input by defense counsel through consideration of a defendant's cooperation (which would include plea bargaining), and by allowing the consideration

of factors going to mercy and manifest injustice.[4] The standards, as written, do not violate defendant's due process rights. Further, the record does not disclose that the standards as applied to defendant violate his rights of due process. Defendant's position to the contrary is not well taken.

Defendant concedes that RCW 9.92.090 does not in itself deprive him of equal protection of the law. He contends, however, that even though the prosecutorial standards do not impinge upon suspect classifications such as race, or religion, the use of "expedited" and "high impact" crimes as an underlying basis for the filing of habitual criminal charges is arbitrary and thus a denial of equal protection. We do not agree.

Defendant's argument is based upon the false assumption that the standards require mandatory prosecution of all persons charged with "high impact" crimes and exclude therefrom all persons convicted of "expedited" crimes. Moreover, it is based upon the mistaken premise that the procedure for selecting persons for prosecution as habitual criminals does not permit consideration of any of the factors described in *Lee* and *Gilcrist*. Defendant's argument also rests on his assumption that the standards are based on arbitrary and capricious classifications.[5] We have heretofore rejected these assertions and need discuss them no further.

 Finally, defendant argues that there is no rational reason for filing habitual criminal charges against one who is convicted last of a "high impact" crime and failing to charge one who is last convicted of an "expedited" crime. We disagree. If the last conviction involves a "high impact" crime it is an indication that the defendant's criminal

---

[4]The record does not disclose that defendant either attempted to present evidence to the prosecuting attorney or experienced the rejection of any attempt to provide input. To this extent, the issue is moot.

[5]The record discloses no evidence that any alleged discriminatory action was directed at defendant personally.

activities have either not improved or his criminal career has escalated. This clearly falls within the objective of RCW 9.92.090, *i.e.*, the protection of society from high–risk recidivists who pose a threat to society, as evidenced by continued criminality. We have long recognized this as a proper policy. *State v. Lee, supra* at 937; *State v. Miles,* 34 Wn.2d 55, 62, 207 P.2d 1209 (1949). Additionally, in the case where a defendant's latest felony is an "expedited" crime and he also has two previous "high impact" criminal convictions, a habitual criminal allegation may be filed pursuant to the exception policy.

█ Defendant also asserts that selective enforcement of the habitual criminal statute violates equal protection. Such claim has been dealt with at length previously and is not well taken. *See State v. Lee, supra; State v. Jacobsen,* 78 Wn.2d 491, 498–99, 477 P.2d 1 (1970); *State v. Cooper, supra; State v. Nixon, supra.* Finally, defendant argues that if a prosecuting attorney has sufficient evidence to prove the habitual criminal allegation, he *must* prosecute everyone who is thus chargeable. We have consistently held that it is within the prosecuting attorney's discretion to file charges or refuse to charge for reasons other than the mere ability to establish guilt. He may consider a wide range of factors in addition to the strength of the State's case in deciding whether prosecution would be in the public interest. *State v. West,* 197 Wash. 595, 603, 86 P.2d 192 (1939), *cert. denied,* 306 U.S. 660, 83 L. Ed. 1057, 59 S. Ct. 791 (1939); *State v. Cooper, supra; United States v. Lovasco,* 431 U.S. 783, 794, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977). Defendant's argument is rejected.

The Court of Appeals is affirmed.

UTTER, C.J., and WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

ROSELLINI, J. (concurring in the result)—I concur in the result. My dissent in *State v. Lee,* 87 Wn.2d 932, 558 P.2d 236 (1976) would avoid all of the discussion of whether the

288

prosecutor abused his discretion in filing a habitual criminal charge.